STATE of Utah, Plaintiff and Appellee,

v.

Francis Preston MITCHELL, Defendant and Appellant.

No. 900102–CA.

Court of Appeals of Utah.

Dec. 12, 1991.

---

Kenneth R. Brown (argued), Brown & Cox, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen. and Christine F. Soltis, Asst. Atty. Gen., (argued), Salt Lake City, for plaintiff and appellee.

## OPINION

Before BENCH, GREENWOOD and ORME, JJ.

BENCH, Presiding Judge:

Defendant Francis Preston Mitchell appeals his sentence and jury conviction of manslaughter, a second degree felony, in violation of Utah Code Ann. § 76-5-205 (1990). We affirm.

On August 4, 1984, around 9:30 p.m., Fred Duncan and Patricia Tyrell visited the Park City home of Brian Oliver. At approximately 11:00 p.m., an individual broke through the front door of Oliver's house and fatally shot Duncan in the head. In October of 1985, defendant was apprehended and charged with first degree murder, a capital felony, in violation of Utah Code Ann. § 76-5-202(1)(d) (1990).

At trial, defendant admitted shooting Duncan, but claimed that it was accidental. The case was submitted to the jury and defendant was convicted of murder in the first degree, a capital felony. Defendant received a life sentence. Defendant appealed his conviction to the Utah Supreme Court claiming that the trial court erred in allowing Tyrell to testify to matters that she "remembered" after undergoing hypnosis. Defendant argued that hypnotically enhanced testimony should not be admissible as evidence because it is inherently unreliable. The supreme court reversed defendant's conviction and the case was remanded for retrial. *State v. Mitchell*, 779 P.2d 1116 (Utah 1989).

At his second trial, defendant was convicted by a jury of manslaughter. Defendant was sentenced to one to fifteen years in the Utah State Prison, plus a consecutive one to five year enhancement for use of a firearm. Defendant was also fined $10,000 pursuant to Utah Code Ann. § 76-3-301(a) (1990).

Defendant claimed his sentence was illegal and moved to correct it. The motion was denied. Defendant appeals his conviction and sentence on three grounds: (1) that notice of the firearm enhancement penalty was insufficient; (2) that the trial court violated Utah Code Ann. § 76-3-405 (1990) in sentencing defendant to the maximum statutory punishment for manslaughter; and (3) that the trial court abused its discretion in ordering defendant shackled during trial.

## FIREARM ENHANCEMENT NOTICE

■ Defendant first claims that he was not given sufficient legal notice, in the information, of the possibility of an enhanced penalty for the use of a firearm because the information charged a capital offense for which enhancement did not apply. Defendant therefore claims he did not have sufficient notice that he was subject to enhancement penalty provisions when subsequently sentenced for manslaughter. Due process requires that a defendant not be subject to the enhanced penalties found in Utah Code Ann. § 76-3-203 (1990), unless the State provides notice either by: (1) charging under the firearm enhancement statute or, (2) alleging in the information that a firearm was used in the commission of the offense charged. *State v. Angus*, 581 P.2d 992, 995 (Utah 1978). Since questions of constitutional rights are questions of law, we give no deference to the trial court's conclusion that the State provided legally sufficient notice to defendant that he was subject to the firearm enhancement penalty. *See Provo City v. Werner*, 810 P.2d 469, 471 (Utah App.1991).

Defendant argues that the first prong of the *Angus* test was not met because defendant was never specifically notified that he was being charged under the enhancement statute. Defendant then argues that the second prong, that a firearm was used in the commission of the offense charged in the information, assumes that the offense charged in the information is an offense for which enhancement may be appropriate. Defendant argues that since first degree murder is a capital felony whereby enhancement is not a possibility, defendant did not have notice pursuant to *Angus*.

■ The relevant facts of the present case are virtually indistinguishable from those in *State v. Schreuder*, 712 P.2d 264, 272-73 (Utah 1985), where the Utah Supreme Court found that the imposition of the enhanced penalty under Utah Code Ann. § 76-3-203 (1990) was proper. Schreuder was charged with first degree

murder, but at trial was convicted of second degree murder. Schreuder was sentenced to the statutory term and to an enhanced term imposed for the use of a firearm. The supreme court found that the probable cause statement had provided the notice, required by *Angus*, that a firearm had been used in the commission of the homicide. The court therefore held that an enhanced penalty was proper upon conviction for second degree murder. In *Schreuder*, the court stated that "[t]he requirements of *Angus* and constitutional due process are satisfied so long as defendant is given written notice on the face of an information that the State intends to show a crime was committed with the use of a firearm." *Schreuder*, 712 P.2d at 273. *See also State v. Speer*, 750 P.2d 186, 192 (Utah 1988).

In the present case, the probable cause statement reads, in pertinent part:

On the evening of August 4, 1984, the Park City Police Department responded to a shooting at the Bryan and Susan Oliver residence in Park City, Utah. The victim of the shooting was Fred Duncan of Miami, Florida, who was a guest in the Oliver residence. The shooting occurred after the defendant kicked open the front door of the Oliver residence and fired one shot into the head of the deceased at close range.

Thus, it is clear that the probable cause statement in this case, as part of the information, alleged that a firearm was used in the commission of the offense charged. Defendant, therefore, had legally sufficient notice as required by *Angus*. The trial court did not err in ruling that notice of the firearm enhancement provision was sufficient.

## SENTENCING

Defendant next claims that his sentence violates Utah Code Ann. § 76-3-405 (1990), which precludes the imposition of a more severe sentence upon retrial.[1] Questions

---

1. Section 76-3-405 provides that
   [w]here a conviction or sentence has been set aside on direct review or on collateral attack,

   the court shall not impose a new sentence for the same offense or for a different offense based upon the same conduct which is more

of legislative intent and statutory interpretation are matters of law, not of fact; the trial court's ruling is therefore a question of law that we review for correctness. *Asay v. Watkins*, 751 P.2d 1135, 1136 (Utah 1988); *Roosevelt City Corp. v. Nebeker*, 815 P.2d 738, 739 (Utah App.1991).

Defendant was originally sentenced to life imprisonment following his capital felony conviction. At his second trial, defendant was convicted of manslaughter, a second degree felony, and was sentenced to the statutory term of one to fifteen years. The trial court also imposed a consecutive term of one to five years under the firearm enhancement sentencing provision, and a $10,000 fine. Defendant argues that this second sentence is more severe than his first sentence of life imprisonment and therefore violates section 76–3–405.

■ Defendant relies upon cases that address the prohibition of imposing a more severe second sentence and the prohibition of trading various sentencing elements. These cases, however, are distinguishable from the present case. In *State v. Sorensen*, 639 P.2d 179, 181 (Utah 1981), the supreme court held that "[b]ecause the increase in time of commitment made the second sentence in this case more severe than the first, the sentence was contrary to section 76–3–405." In *Wisden v. District Court of Sevier County*, 694 P.2d 605 (Utah 1984), plaintiffs' time commitments were increased by the district court on retrial and fines were eliminated. The supreme court there held that "the district court sentences were contrary to section 76–3–405 and were invalid." *Id.* at 606. In the present case, the time commitment is less severe on the second sentence, one to fifteen years plus a one to five year firearm enhancement, as compared to life imprisonment on the first sentence.

The imposition of the $10,000 fine is the element that makes the comparison difficult as to severity. In *Sorensen*, the court said that there could be no tradeoff of elements, such as an increase in one element of a sentence by reference to a decrease in another element. *Sorensen*, 639 P.2d at 181. In this case, however, there could be no tradeoff of elements between the first and second sentences because the firearm enhancement and the fine were not even available on the first sentence. At the time defendant was convicted of manslaughter, the trial court imposed the maximum statutory penalties for the offense. The trial court did not trade elements off between the first and second sentences.

The legislative intent behind section 76–3–405 is to protect an accused's constitutional right to appeal without having to face the possibility of a harsher sentence. *See State v. Babbel*, 813 P.2d 86, 87 (Utah 1991). For example, the statute would preclude the imposition of the death penalty on a retrial where an accused had originally been sentenced to life imprisonment. Since life imprisonment and the death penalty are so severe on their own, it is logical that the sentencing scheme does not apply any further penalties, such as firearm enhancement or fines, to a capital felony conviction. Defendant's first sentence of life imprisonment was based on a capital felony conviction. The firearm enhancement penalty and the $10,000 penalty were not applied to this sentence because they are not part of the sentencing scheme for capital felonies. However, on retrial, defendant was convicted of manslaughter, and was sentenced to the statutory term of years, plus the firearm enhancement penalty and $10,000 penalty. Those penalties are all proper under the sentencing scheme for manslaughter.

We are convinced, and conclude as a matter of law, that defendant's second sentence of one to fifteen years, plus one to five years and a $10,000 fine is less severe when viewed *in toto* than his first sentence of life imprisonment. This is so even though the first sentence did not include components analogous to aspects of the second sentence. Therefore, we do not find that defendant's second sentence violates section 76–3–405.

### SHACKLING

■ Defendant claims he was denied due process and equal protection by being

severe than the prior sentence, less the portion of the prior sentence previously satisfied.

shackled during the jury trial. The decision whether to restrain an accused rests in the sound discretion of the trial judge and the test on review is whether the trial judge has abused that discretion. *Kennedy v. Cardwell*, 487 F.2d 101, 107–10 (6th Cir.1973), *cert. denied, Kennedy v. Gray*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974).

> Since it is beyond question that the trial judge is in the best position to assess "the extent to which security measures should be adopted to prevent the disruption of the trial, harm to those in the courtroom, (and) escape of the accused," *United States v. Samuel*, 431 F.2d 610, 615 (4th Cir.1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 964 [28 L.Ed.2d 229] (1971); *Illinois v. Allen*, [397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)], the decision to impose appropriate means in restraining, even to the extent of shackling, the defendant lies within the informed discretion of the trial court and will not be disturbed on appeal unless that discretion was clearly abused. *Guffey v. United States*, 310 F.2d 753, 754 (10th Cir. 1962).

*United States v. Hack*, 782 F.2d 862, 867 (10th Cir.1986), *cert. denied, Owens v. United States*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986).

█ It is well established that "[a] principal ingredient of due process is that every criminal defendant is entitled to a fair and impartial trial." *Kennedy*, 487 F.2d at 104. A criminal defendant's right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). Further, "[t]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Id.* It necessarily follows from this that a criminal defendant is generally entitled to the "physical indicia of innocence." *Kennedy*, 487 F.2d at 104. This indicia of innocence most often refers to the right of a criminal defendant to be tried in front of a jury in the "garb of innocence," rather than in prison clothing. *Id.* at 105. "The prejudicial effect that flows from a defendant's appearing before a jury in identifiable prison garb is not measurable, and it is so potentially prejudicial as to create a substantial risk of fundamental unfairness in a criminal trial." *Chess v. Smith*, 617 P.2d 341, 344 (Utah 1980). The rule that a defendant be tried in the "garb of innocence" has generally been extended to include a defendant's right to be tried without being shackled, chained, bound, handcuffed, gagged, or otherwise physically restrained. Numerous cases support the view that this right is an essential component of a fair and impartial trial. *See, e.g., Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Woodards v. Cardwell*, 430 F.2d 978 (6th Cir.1970), *cert. denied, Cardwell v. Woodards*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); *Hardin v. Estelle*, 365 F.Supp. 39 (D.Tex.1973), *aff'd.* 484 F.2d 944 (5th Cir.1973); *Clark v. State*, 280 Ala. 493, 195 So.2d 786 (1967), *cert. denied, Clark v. Alabama*, 387 U.S. 571, 87 S.Ct. 2071, 18 L.Ed.2d 967 (1967); *McKenzey v. State*, 138 Ga.App. 88, 225 S.E.2d 512 (1976). *See generally* Sheldon R. Shapiro, Annotation, *Propriety and Prejudicial Effect of Gagging, Shackling, or Otherwise Physically Restraining Accused During Course of State Criminal Trial*, 90 A.L.R.3d 17 (1979).

While compelling an accused to wear jail clothing furthers no essential state policy, compelling an accused to be physically restrained furthers the essential state policy of providing security in the courtroom. For these reasons, courts have recognized that the right to be tried without physical restraints is subject to exception. "While a defendant in a criminal case is presumed innocent and, therefore, should be accorded with the indicia of innocence in a jury trial, his right to appear before the jury unfettered from physical restraints is not unqualified." *Hack*, 782 F.2d at 867 (citations omitted). An accused may be physically restrained if needed to prevent an escape, resort to violence, or disruption of the trial. *See, e.g., Allen*, 397 U.S. 337, 90 S.Ct. 1057; *Kennedy*, 487 F.2d 101; *People v. Kimball*, 5 Cal.2d 608, 55 P.2d 483 (1936). In

**474**

*People v. Hall,* 157 Cal.App.3d 538, 223 Cal.Rptr. 267, 269–70 (1984), the court found that the trial court did not abuse its discretion in requiring defendant to wear leg chains throughout trial where defendant had previously escaped from custody and where the crimes charged were crimes of violence.

After examining the factual circumstances of this case, we conclude that the trial court did not abuse its discretion in ordering defendant to wear some type of physical restraint during his trial. Defendant was on retrial for a crime of violence, during which a firearm was used. The trial court was aware that defendant had fled the state after shooting the victim. Between the first and second trials, defendant had been confined in the New Mexico Penitentiary and had escaped from there by helicopter. Later, when defendant returned to Utah and was in custody in the Summit County jail, he was found with an 18-inch "shank" (a homemade knife) within his first week at the jail. Within its informed discretion, the trial court found that defendant was a security risk and should be restrained in some manner. The trial court offered defendant a leg brace that would provide some degree of physical restraint and security, but which could be hidden from the jurors' view under defendant's pants. Defendant, however, chose the more obtrusive and visible shackles, apparently having concluded they would be physically more comfortable. Although it has been held that shackles should be used only as a "last resort," in "extreme cases," defendant cannot argue in this case that the use of shackles was improper because defendant himself chose that method of restraint.

## CONCLUSION

Defendant had sufficient notice from the probable cause statement that he was subject to the firearm enhancement penalty. Defendant's second sentence was not more severe than his first sentence and therefore did not violate section 76–3–405. In view of the security risk, it was within the trial court's discretion to require defendant to wear some type of physical restraint dur-

ing trial. Inasmuch as defendant opted for shackles instead of the leg brace, he cannot now attack the use of shackles as being an abuse of discretion by the trial court.

Defendant's manslaughter conviction and sentence are, therefore, affirmed.

GREENWOOD and ORME, JJ., concur.