2000 UT 35

STATE of Utah, Plaintiff and Appellee,

v.

Jason KOHL, Defendant and Appellant.

No. 981821.

Supreme Court of Utah.

March 28, 2000.

Jan Graham, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, Matthew P. Jube, Provo, for plaintiff.

Nelson Abbott, Provo, for defendant.

WILKINS, Justice:

¶ 1 Defendant Jason Kohl appeals from convictions for aggravated burglary, a first degree felony, and possession of a weapon by a restricted person, a third degree felony. We affirm, but remand for the limited purpose of resolution on the record of defen-

dant's objections to the presentence investigation report pursuant to Utah Code Ann. § 77–18–1(6)(a) (1999).

## BACKGROUND [1]

¶2 On April 6, 1998, shortly after noon, Kornya French placed a 911 telephone call indicating that the defendant and five or six companions had invaded her home in Pleasant Grove, Utah, which she shared with Justin Lee. She gave her address and indicated the approximate number and gender of the invaders. She also stated that handguns had been used and that the invaders left in three vehicles: a green Chevrolet pickup truck, a blue Chevrolet S–10 truck, and a maroon passenger car. Officer Flygare received the dispatch call, which related this information and indicated that French had personally witnessed these events. The officer arrived at French's home within minutes. As officers were speaking with French, a green truck drove by which French pointed out as being the green truck she had seen in front of her home when the suspects first arrived. Officer Flygare broadcasted the description and approximate location of the green truck, asking that it be stopped in connection with the aggravated burglary. Another officer, Officer Tauffer, pursued and stopped the truck to question the driver about the incident.

¶3 The sole driver of the green truck, Tiffanie Davis, informed Officer Tauffer that earlier that morning defendant had approached her and asked where French lived. Davis also described the defendant's vehicle, indicating that he was driving a blue truck and his friends had a maroon vehicle. She also indicated that the group was currently at her house. Officer Tauffer broadcasted this information over his police radio. As the officers followed Davis back to her home they observed a blue truck followed by a maroon car matching the description and number of occupants given by French and Davis, passing in the opposite direction. Based upon the dispatch and bulletin from Officer Tauffer, Officer Eastman stopped the blue truck and removed defendant and the others. In removing the occupants, police found two guns—an SKS assault rifle and a twelve-gauge shotgun—which some officers testified were in plain view in the bed of the truck. Meanwhile, Officers Willes and Blackhurst stopped the maroon car and, after removing the occupants, saw and confiscated three loaded guns in plain view.

¶4 Defendant was charged with aggravated burglary of a dwelling and possession of a firearm by a restricted person. The trial court, after conducting an evidentiary hearing, denied defendant's motion to suppress the seized weapons.[2] The matter was then tried before a jury. Defendant was tried together with two co-defendants, Frank Pettingill and Donald Veteto.

¶5 During the trial, and despite a relevancy objection from the defendant, the State elicited testimony regarding the amount of ammunition in and the firing status of the SKS assault rifle and the twelve-gauge shotgun. The prosecutor also called several witnesses at trial to testify for the State. French, an in-custody witness, appeared in civilian clothing while Michael Hubbard, a co-defendant also in custody, appeared in jail attire. Before Hubbard testified, defendant moved for a mistrial and objected to Hubbard's appearance in jail garb. The trial court denied the motion.

¶6 During his closing argument, the prosecutor gave several reasons why the testimony of certain co-defendants was credible, including the following:

> they saw the weapons in plain view, *based upon the information they received*. And furthermore, they have articulable and reasonable concern for their safety, which justified a search of this vehicle and the occupants. The motion to suppress is denied. All the weapons will be received into evidence subject to the proper foundation being laid.
> (Emphasis added.)

---

1. We recite the facts from the record in the light most favorable to the jury's verdict. *See State v. Johnson*, 784 P.2d 1135, 1137 (Utah 1989).

2. In denying defendant's motion to suppress the trial court ruled:
   The motion to suppress is denied. Let me just state that *I find specifically the officers had specific and articulable facts that supported the right to stop and conduct an investigation,* and they also had probable cause to search after

If you look at the manner they testified, they saw they were both threatening while they had the guns. They didn't come in and try to make a clean story to the State. And I recognize that having known the defendants and having engaged in this incident with the defendants that they would be somewhat reluctant.

The trial court sustained defendant's objection to this comment and gave a curative instruction, telling the jury to "[r]emember my admonition. Statements of the lawyers are not evidence in the case." In addition, the court's final jury instructions included an admonition that statements of counsel were not evidence.

¶ 7 The jury found defendant and his co-defendants guilty of aggravated burglary. Defendant was also found guilty of possession of a firearm by a restricted person. At sentencing, the court determined that the group crime penalty enhancement statute, Utah Code Ann. § 76–3–203.1, was constitutional and ordered that it be imposed against the defendant for the aggravated burglary offense. The court sentenced defendant to an indeterminate term of five years to life. The court applied the enhancement statute, sentencing defendant to an additional nine years.

¶ 8 Defendant argues on appeal that: (1) the trial court erred in denying his motion to suppress the admission of the weapons; (2) the trial court erred in admitting evidence regarding the ammunition and firing status of the SKS assault rifle and twelve-gauge shotgun; (3) the trial court should have declared a mistrial when the prosecutor selectively chose to dress an in-custody witness in jail attire; (4) the comments by the prosecutor in closing argument amount to reversible error; (5) the cumulative effect of the errors warrants reversal; (6) the group crime penalty enhancement statute is unconstitutional and therefore should not have been imposed; and (7) the trial court erred in failing to correct inaccuracies in the presentence investigation report. We will address these issues in turn.

## ANALYSIS

### I. MOTION TO SUPPRESS

#### A. In General

¶ 9 First, defendant challenges the trial court's denial of his motion to suppress the admission of the two assault rifles and three handguns found in the two vehicles. "We review the factual findings underlying the trial court's decision to grant or deny a motion to suppress evidence using a clearly erroneous standard." *State v. Pena*, 869 P.2d 932, 939 n. 4 (Utah 1994). However, we review the trial court's conclusions of law based on these findings "for correctness, with a measure of discretion given to the trial judge's application of the legal standard to the facts." *State v. Moreno*, 910 P.2d 1245, 1247 (Utah Ct.App.1996); *see Kaysville City v. Mulcahy*, 943 P.2d 231, 233 (Utah Ct.App. 1997) (indicating "whether specific set of facts gives rise to reasonable suspicion is a determination of law and is reviewed non-deferentially for correctness" (citation omitted)).

¶ 10 A car stop and investigatory detention by police of the car's occupants constitutes a "seizure" under the Fourth and Fourteenth Amendments. *See State v. Case*, 884 P.2d 1274, 1276 (Utah Ct.App.1994); *State v. Roth*, 827 P.2d 255, 257 (Utah Ct. App.1992). To surmount the Fourth Amendment's proscription against unreasonable searches and seizures, a limited crime investigation stop must satisfy a two-part test: " 'First, the officer's initial stop must be justified; second, subsequent actions must be within the scope of the circumstances justifying the stop.' " *Mulcahy*, 943 P.2d at 234 (quoting *Case*, 884 P.2d at 1276); *see Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Defendant challenges only the first part of the test: whether officers had reasonable suspicion to justify the stop of the two vehicles.

#### B. Reasonable Suspicion

¶ 11 A stop is justified only if there is a reasonable suspicion that a person is involved in criminal activity. *See Mulcahy*, 943 P.2d at 234. Police "must be able to

point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Id.* (citations omitted). While the required level of suspicion is lower than the standard required for probable cause to arrest, "the same totality of facts and circumstances approach is used to determine if there are sufficient 'specific and articulable facts' to support reasonable suspicion." *Case,* 884 P.2d at 1276 (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880) (additional citations omitted). The burden of establishing those articulable facts falls on the State. *See id.*

¶ 12 In this case, defendant argues that the stop of the vehicles was not based on articulable facts supporting a reasonable suspicion of criminal activity because the *source* of the 911 dispatch call was not sufficiently identified by the State at the suppression hearing, although the informant was later identified at trial as the victim, Kornya French. Therefore, defendant argues that the stop violated his Fourth Amendment rights, as well as his rights under article I, section 14 of the Utah Constitution and Utah Code Ann. § 77-7-15 (1999).[3] We disagree.

¶ 13 It is well-established in this state that the articulable facts supporting reasonable suspicion may come from an officer's own observations as well as *external information* such as an informant's tip via police dispatch, or information, bulletins or flyers received from other law enforcement sources. *See Pena,* 869 P.2d at 940 ("[U]nder certain circumstances, police officers can rely on a dispatched report in making an investigatory stop."); *City of St. George v. Carter,* 945 P.2d 165, 168 (Utah Ct.App.1997); *Mulcahy,* 943 P.2d at 234.

¶ 14 We conclude that the State produced sufficient evidence to show the dispatch was based on articulable facts to justify the stop through the informant's tip. All the State must introduce is evidence showing the informant's tip was reliable, provided suffi-

cient detail of criminal activity, and could be corroborated by police.

¶ 15 Based upon the facts of this case, the informant's tip was reliable. The informant not only provided information about whom to stop, including the make and color of the vehicles and the number of suspects, but also indicated why the stop was to be made. *See Case,* 884 P.2d at 1278 ("Merely providing descriptive information to an officer about *whom* to stop, by itself, is not enough to justify the stop if there are no articulable facts pointed to which establish *why* a stop was to be made."). In addition, and in this case more importantly, the police personally confirmed the dispatcher's report of the informant's tip first by direct contact with French, the victim, and thereafter by finding several males and vehicles matching French's description, including the driver of the green truck, Tiffanie Davis, who confirmed critical elements of the description given in person by French to officers. In light of the foregoing, we hold that the officers' stop was supported by reasonable suspicion and affirm the trial court's ruling on this motion.

## II. EVIDENTIARY RULING

¶ 16 Second, defendant challenges the trial court's admission of evidence regarding the ammunition and firing status of the SKS assault rifle and twelve-gauge shotgun. Specifically, he argues that under Utah Rules of Evidence 402 and 403, the testimony of Officer Eastman, stating that the guns were loaded and ready to fire, was irrelevant and unduly prejudicial because (1) the evidence at trial did not show that the rifles were used in the home invasion or the assault, and (2) this evidence was irrelevant to the charge of possession of a weapon by a restricted person.

¶ 17 "While relevant evidence is generally admissible ... a trial court has broad discretion to determine whether proffered evidence is relevant, and we will find error in a relevancy ruling only if the trial

---

**3.** Although defendant alleges violations of article I, section 14 of the Utah Constitution and Utah Code Ann. § 77-7-15 as independent bases for this appeal, he fails to proffer any explanation as to how this court's analysis should be conducted

under either of these sections. Accordingly, we decline to address these claims separately. *See State v. Roth,* 827 P.2d 255, 257 n. 1 (Utah Ct.App.1992).

court has abused its discretion." *State v. Harrison*, 805 P.2d 769, 780 (Utah Ct.App. 1991) (Rule 402); *see State v. Lindgren*, 910 P.2d 1268, 1271 (Utah Ct.App.1996) (Rule 403). We will reverse an erroneous evidentiary ruling only if, "absent the error, there is a reasonable likelihood that there would have been a more favorable result for the defendant. A reasonable likelihood of a more favorable outcome exists when the appellate court's confidence in the verdict actually reached is undermined." *Harrison*, 805 P.2d at 781 (citations omitted); *see State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992) (stating even if evidence is erroneously admitted, it cannot result in reversible error unless error is harmful); *see also* Utah R.Crim. P. 30(a); Utah R. Evid. 103(a); Utah R. Civ. P. 61. "This review requires the appellate court to determine from the record what evidence *would have been* before the jury absent the trial court's error." *Lindgren*, 910 P.2d at 1274 (emphasis in original).

▮▮▮ ¶ 18 At trial, the State first attempted to introduce evidence regarding the firing status and condition of the assault rifle and shotgun during Officer Eastman's testimony and later when Officers Frampton and Blackhurst testified. Defendant asserted a timely objection during Officer Eastman's testimony which the trial court overruled. However, defendant failed to raise an objection to the subsequent admission of this evidence during the testimony of two other officers, Frampton and Blackhurst. Accordingly, even if we assume the trial court's ruling was erroneous, we cannot say there was a reasonable likelihood of a more favorable result as the evidence would have been before the jury even absent the court's error. Because we hold such error, if any, was harmless in this instance, we reject defendant's claim.

### III. MOTION FOR MISTRIAL

¶ 19 Third, defendant maintains that the trial court should have declared a mistrial

when the prosecutor chose to dress the victim, an in-custody witness, in civilian clothing but compelled a co-defendant witness, Michael Hubbard, to testify in jail attire. Both were called as witnesses adverse to the defendant.

▮▮▮ ¶ 20 "A trial court has discretion to grant or deny a motion for a mistrial and its decision will remain undisturbed absent an abuse of that discretion. A defendant has the burden of persuading this court that the conduct complained of prejudiced the outcome of the trial." *State v. Kiriluk*, 1999 Utah Ct. App. 030, ¶ 19, 975 P.2d 469 (citations omitted). In other words, "[u]nless a review of the record shows that the court's decision is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial, we will not find that the court's decision was an abuse of discretion." *State v. Robertson*, 932 P.2d 1219, 1231 (Utah 1997) (citations omitted). We review such a decision with deference "because of the advantaged position of the trial judge to determine the impact of events occurring in the courtroom on the total proceedings." *Id.* (citations omitted).

▮▮▮ ¶ 21 Defendant cites *Chess v. Smith*, 617 P.2d 341 (Utah 1980), and *Gentry v. Smith*, 600 P.2d 1007 (Utah 1979), to support the proposition that a prosecutor's decision to have some in-custody witnesses appear in jail attire while placing other in-custody witnesses in civilian clothing violates a defendant's constitutional right to a fair trial. We disagree with defendant's overbroad reading of these cases. Simply, these cases stand for the proposition that it is a constitutional violation for a state to compel an *accused* to stand trial before a jury dressed in prison clothes. *See State v. Bennett*, 2000 UT 34, ¶¶ 3–4, 999 P.2d 1; *Chess*, 617 P.2d at 345; *Gentry*, 600 P.2d at 1008; *see also Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1696–97, 48 L.Ed.2d 126 (1976).[4] The same rule does not extend to in-custody witnesses

---

4. In *Chess* we stated that:

> The prejudicial effect that flows from a *defendant's* appearing before a jury in identifiable prison garb is not measurable, and is so potentially prejudicial as to create a substantial risk

of fundamental unfairness in a criminal trial.... "The potential effects of presenting *an accused* before the jury in prison attire need not, however, be measured in the abstract. Courts have, with few exceptions, [footnote

called on behalf of the prosecution. None of the protections afforded to an accused regarding the presumption of innocence are implicated by the appearance of adverse witnesses. Moreover, the in-custody witness presented in jail clothing, Hubbard, twice admitted without objection in the presence of the jury to his custodial status. We find no error in the court's ruling.

## IV. PROSECUTORIAL MISCONDUCT

¶ 22 Fourth, defendant argues that a particular statement by the prosecutor made during closing argument constitutes prosecutorial misconduct warranting reversal. We review prosecutorial misconduct claims for an abuse of discretion and will reverse only if defendant has shown that

> [1] "the actions or remarks of . . . counsel call to the attention of the jury a matter it would not be justified in considering in determining its verdict and, if so, [2] under the circumstances of the particular case, whether the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result."

*State v. Longshaw*, 961 P.2d 925, 928 (Utah Ct.App.1998) (quoting *State v. Cummins*, 839 P.2d 848, 852 (Utah Ct.App.1992) (additional citations omitted)).

¶ 23 The prosecutor, during closing argument and in an apparent attempt to portray the co-defendants called by the State as credible witnesses, said that defendant's background would likely make the co-defendants reluctant to testify against the defendant.[5] Defendant argues that the jury was not entitled to consider this claim because no evidence had been presented during trial to support it. Moreover, he argues that the jury was surely influenced by these remarks given the additional evidence alleging he was caught with a loaded SKS assault rifle and shotgun in his truck, and that he and his cohorts invaded the victim's home.

¶ 24 These remarks were improper in that the prosecutor called attention to matters that should not have been considered by the jury in reaching their verdict. However, defendant promptly objected and the court sustained the objection giving an immediate curative instruction to the jury. An additional curative instruction was included in the overall jury instructions given after closing arguments. Defendant has not shown, as is his burden, that the comment was so prejudicial as to defeat the mitigating effect of the court's two curative instructions. *See State v. Colwell*, 2000 UT 8, ¶ 39, 994 P.2d 177. We therefore conclude that the comments do not constitute harmful and reversible error in this instance.

---

omitted] determined that *an accused* should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system. . . . This is a recognition that the constant reminder of the *accused's* condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The *defendant's clothing* is so likely to be a continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play."

617 P.2d at 344–45 (emphasis added) (quoting *Estelle v. Williams*, 425 U.S. 501, 504–05, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976)). The Utah Court of Appeals reiterated this holding in *State v. Mitchell*, 824 P.2d 469, 473 (Utah Ct.App. 1991), where it stated:

It is well established that "[a] principal ingredient of due process is that every criminal defendant is entitled to a fair and impartial

trial." A criminal defendant's right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. Further, "[t]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." It necessarily follows from this that a criminal defendant is generally entitled to the "physical indicia of innocence." This indicia of innocence most often refers to the right of a criminal defendant to be tried in front of a jury in the "garb of innocence," rather than in prison clothing.

*Id.* (citations omitted).

5.  The prosecutor said:

If you look at the manner they testified, they saw they were both threatening while they had the guns. They didn't come in and try to make a clean story to the State. And I recognize that having known the defendants and having engaged in this incident with the defendants that they would be somewhat reluctant.

## V. CUMULATIVE ERROR

¶ 25 Fifth, defendant invokes the cumulative error doctrine by arguing that even if the errors claimed above do not individually warrant reversal, together they were cumulatively harmful requiring reversal. "Under the cumulative error doctrine, we will reverse only if 'the cumulative effect of the several errors undermines our confidence ... that a fair trial was had.'" *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (citations omitted). In assessing a cumulative error claim, "we consider all the identified errors, as well as any other errors we assume may have occurred." *Id.; see State v. Young*, 853 P.2d 327, 367 (Utah 1993). Although defendant has claimed many errors on appeal, we have determined that his claims either do not constitute error or are errors so minor as to result in no harm. Having examined the effect of these errors, we are convinced that the aggregation of these errors did not result in a fundamentally unfair trial. Accordingly, the cumulative error doctrine does not afford defendant relief in this case.

## VI. GROUP CRIME PENALTY ENHANCEMENT STATUTE

¶ 26 Sixth, defendant argues that the trial court erroneously imposed an enhanced sentence in reliance on Utah's group enhancement penalty statute, Utah Code Ann. § 76-3-203.1 (1999). He urges us to remand this case for a new trial on the group crime penalty enhancement charge for two reasons: first, because the trial court made its *own* determination as to whether to impose the enhancement, rather than the jury, violating defendant's constitutional right to a jury trial on the issue; and second, because no jury finding was made as to whether the elements of the group crime enhancement statute were satisfied beyond a reasonable doubt.

¶ 27 In *State v. Lopes*, 1999 UT 24, ¶¶ 16-17, 980 P.2d 191, we held subsection (5)(c) of section 76-3-203.1 of the Utah Code unconstitutional.[6] There, we concluded that the enhancement statute created a new and separate offense and, therefore, held that due process requires the state to prove each element of this crime beyond a reasonable doubt. *See Lopes*, 1999 UT 24 at ¶¶ 13-15, 22, 980 P.2d 191. Additionally, we held that a defendant has a constitutional right to have a jury, rather than the sentencing judge, determine whether the group enhancement statute applies and determine whether the state proved each element of this crime beyond a reasonable doubt. *See id.* at ¶¶ 16-17, 22 (holding section 76-3-203.1(5)(c) unconstitutional because statute directs judge to become fact finder, expressly taking power away from jury, ultimately depriving defendant of right to trial by jury).

¶ 28 We agree with defendant that *Lopes* applies to this case. Moreover, we agree that in applying section 76-3-203.1(5)(c), the court violated defendant's constitutional right to a jury trial, as a defendant has a right to have a jury determine the facts of a case. *See* Utah Const. art. I, § 12 (Supp.1999) (granting accused a right to a speedy public trial by jury in criminal proceedings); Utah Code Ann. § 77-17-10 (1995) (indicating that in criminal jury trials, absent waiver, questions of fact and weight of evidence are jury matters); *Lopes*, 1999 UT 24 at ¶ 16, 980 P.2d 191. Here, the sentencing judge relied on section 76-3-203.1(5)(c), since declared unconstitutional by *Lopes*, and found that the group crime penalty statute applied to the facts of this case on the aggravated burglary charge.[7] In doing so, the judge became the fact finder. This is undoubtedly unconstitutional.

---

6.  Section 76-3-203.1(5)(c) provides:

    (c)(i) The sentencing judge rather than the jury shall decide whether to impose the enhanced penalty under this section. (ii) The imposition of the penalty is contingent upon a finding by the sentencing judge by a preponderance of the evidence that this section is applicable. (iii) In conjunction with sentencing the court shall enter written findings of fact concerning the applicability of this section.

Utah Code Ann. § 76-3-203.1(5)(c) (1999). However, we held that the remaining portion of the statute was constitutional. *See Lopes*, 1999 UT 24 at ¶ 20, 980 P.2d 191.

7.  The trial court stated:

    *[I]t's the judgement and sentence of the Court that [the] sentence should be enhanced pursuant to the group enhancement penalty that applies to the facts of this case as it relates to ...*

¶ 29 However, under the unique facts of this case, we find the error to have been without legal consequence as the result of the combined effect of two events. Firstly, the only factual element required to have been found by the jury that was not submitted to the jury was whether or not defendant committed aggravated burglary "in concert with two or more persons" as required by section 76–3–203.1(1). In this instance, defendant was tried simultaneously with two additional persons, before the same jury, and with whom the defendant was found guilty of aggravated burglary. The trial court could have properly instructed the jury that in the event all three defendants were found guilty of the charged aggravated burglary, the jury *must* also find that each defendant acted "in concert with two or more persons" in the commission of the burglary.

¶ 30 Secondly, defendant was tried before our decision in *Lopes*. As a result, the trial judge could not have known of our decision, and his failure to require the jury to decide the factual question regarding defendant acting in concert with his two co-defendants cannot amount to plain error. The trial court's action was consistent with the law as it existed at the time. Obviously, since our decision in *Lopes*, it would be plain error for the court not to submit the question to the jury. Consequently, although clearly in error as made plain by our decision in *Lopes*, had the jury been asked to consider the question in this case, it could not have reached a different result.

¶ 31 We therefore hold that under these very limited circumstances, the error was without legal significance as applied to defendant, and affirm the application of the group crime enhancement.

### VII.   OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

¶ 32 Finally, defendant urges us to remand this case to the trial court to correct errors in the presentence investigation report so as to comply with Utah Code Ann. § 77–18–1(6)(a) (1999) and *State v. Jaeger*, 1999 UT 1, 973 P.2d 404, which require the trial court to resolve on the record any claimed inaccuracies in the report. Whether the trial court properly complied with a legal duty is a question of law which we review for correctness. *See Slattery v. Covey & Co.*, 909 P.2d 925, 927 (Utah Ct.App.1995) (whether trial court properly complied on remand is question of law).

¶ 33 Section 77–18–1(6)(a) of the Utah Code provides:

Any alleged inaccuracies in the presentence investigation report, which have not been resolved by the parties and the [D]epartment [of Corrections] prior to sentencing, shall be brought to the attention of the sentencing judge, and the judge may grant an additional ten working days to resolve the alleged inaccuracies of the report with the department. If after ten working days the inaccuracies cannot be resolved, the court *shall make a determination of relevance and accuracy on the record.*

Utah Code Ann. § 77–18–1(6)(a) (1999) (emphasis added). We explained in *Jaeger* that compliance with this section "requires the sentencing judge to consider the party's objections to the report, make findings on the record as to whether the information objected to is accurate, and determine on the record whether that information is relevant to the issue of sentencing." *Jaeger*, 1999 UT 1 at ¶ 44, 973 P.2d 404. It is insufficient to make general statements "concerning the court's view of the defendant and the case." *Id.*

¶ 34 Defendant objected to the presentence report prepared in this case. Specifically, he claimed that the report: (1) inaccurately stated that defendant threatened to break the

---

*aggravated burglary.* The jury found each of the three defendants guilty of that crime beyond a reasonable doubt, *and the relevant portion of the enhancement statute applies to this case.* There was ample evidence at the trial and the record in this case that all three defen-

dants ... either directly committed aggravated burglary along with two or more others or solicited, requested, demanded, encouraged or intentionally aided another person to engage in conduct which constituted aggravated burglary along with two or more persons.

victim's legs; (2) inaccurately stated that the victim was especially vulnerable; (3) inaccurately stated that the crime was committed with extreme cruelty; (4) inaccurately stated that defendant had a bad attitude; (5) failed to reflect defendant's youthfulness; and (6) failed to indicate that a long sentence would impose a hardship on defendant. The trial court failed to address the claimed inaccuracies in the report in imposing a sentence.

¶ 35 We agree that the court did not comply with its legal duty to properly resolve defendant's objections. The State also agrees that the court failed to comply with section 77–18–1(6)(a) and urges us to remand the case for the limited purpose of allowing the court to comply with its statutory duty. We agree. Accordingly, we remand this case to the trial court with instructions that it expressly resolve defendant's objections in full compliance with section 77–18–1(6)(a) (1999). *See id.* at ¶ 45 (noting remanding remedy).

### CONCLUSION

¶ 36 We conclude that the trial court properly denied defendant's motion to suppress. We reject defendant's relevancy argument as any error in the admission of the firing status of the weapons was without consequence in this case. We also hold that defendant was not deprived of a right to a fair trial when an in-custody witness called by the prosecution testified in jail attire. Moreover, defendant has not shown that the comment of the prosecutor was so prejudicial as to defeat the mitigating effect of the court's curative instruction so as to constitute reversible error. Nor are we convinced that the impact of the minor errors that occurred during the trial implicates the cumulative error doctrine. We hold that in applying section 76–3–203.1(5)(c) of the Utah Code, the court violated defendant's right to a jury trial on the group enhancement charge. However, because the jury could have been directed as a matter of law to find that defendant acted in concert with two or more persons in the commission of the aggravated burglary, and the trial occurred before our decision in *Lopes,* the error does not require reversal. Finally, we remand for the limited

purpose of resolving defendant's objections to the presentence report on the record as required by section 77–18–1(6)(a).

¶ 37 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice RUSSON, and Justice DURRANT concur in Justice WILKINS' opinion.

