2005 UT App 494

**STATE of Utah, Plaintiff and Appellee,**

v.

**Cheriff Sarkis MAHI, Defendant and Appellant.**

No. 20040080–CA.

Court of Appeals of Utah.

Nov. 10, 2005.

Margaret P. Lindsay, Orem, and Patrick V. Lindsay, Provo, for Appellant.

Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and THORNE.

## OPINION

McHUGH, Judge:

¶ 1 Cheriff Sarkis Mahi appeals from a jury verdict convicting him of one count of aggravated burglary, a first degree felony; one count of robbery, a second degree felony; and one count of aggravated assault, a third degree felony. *See* Utah Code Ann. §§ 76–5–103, –6–203, –6–301 (2003). Mahi argues (1) that the trial court incorrectly refused to consider his motion to dismiss his case for failure to comply with Utah's speedy trial statute, *see id.* § 77–29–1 (2003); (2) that the trial court abused its discretion by failing to declare a mistrial after the prosecution introduced evidence from which it was apparent that Mahi was incarcerated at the time of trial; and (3) that his trial counsel provided ineffective assistance by failing to accept the trial court's offer of a curative instruction after the evidence of incarceration was introduced. We affirm in part and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 Early on the morning of April 25, 2002, Mahi and Blaine Black kicked in the door of Benito Gonzales–Torres's apartment. Mahi and Black were wearing masks and told Gonzales–Torres they were from the Federal Bureau of Investigation.

¶ 3 Mahi hit Gonzales–Torres in the face with a flashlight and a lamp, and then began ransacking the apartment while Black held Gonzales–Torres's face and rubbed it into the floor. Black also removed Gonzales–Torres's ring, almost detaching his finger. The attack

left Gonzales–Torres in pain all over his body and with marks on his face. Victor Gutierrez, Gonzales–Torres's roommate, testified that Mahi came into his bedroom and searched the pockets of his pants. Mahi took $1600 to $1700 in cash from Gonzales–Torres's wallet and a paycheck.

¶4 Gonzales–Torres screamed for help during the attack, and his cousin, Alfredo, came from an adjoining apartment after about twenty minutes. Alfredo held Black down while Gonzales–Torres chased Mahi.

¶5 Salt Lake City Police Officer Shellie Woods responded to a call about a fight and saw Gonzales–Torres running down the street covered in blood. Officer Woods went back to the apartment with Gonzales–Torres, where she noticed that the doorframe appeared to have been kicked in and the apartment was in disarray. Black, who was still being subdued by Alfredo, was arrested after Gonzales–Torres's ring was found in his pocket. Black was convicted of aggravated burglary and robbery, and later testified at Mahi's trial, implicating Mahi in the robbery.

¶6 Mahi escaped and was not caught until December 4, 2002, when Salt Lake City Police Officer David Hendricks saw one man chasing another man down the street in the same area where the robbery had occurred. Officer Hendricks stopped one of the men, who turned out to be Gonzales–Torres. Gonzales–Torres told him about the April attack and said he was chasing Mahi because he recognized him as his assailant. Officer Hendricks then stopped Mahi and arrested him.

¶7 While Mahi was in custody, on June 20, 2003, he executed a disposition request under Utah's speedy trial statute, see Utah Code Ann. § 77–29–1 (2003), asking that the charges against him be resolved. An authorized agent at the jail received and signed the request on July 15, 2003. On the first day of trial, October 28, 2003, Mahi moved to have the charges dismissed, arguing that trial had not taken place within 120 days of the delivery of his written disposition request, as required by Utah Code section 77–29–1. The trial court declined to consider the motion at that time, and Mahi did not raise the issue again at any time during the proceedings.

¶8 On June 26, 2003, police conducted a lineup in connection with the robbery of Gonzales–Torres and Gutierrez. After being informed of the upcoming lineup, Mahi changed his appearance from his booking photograph by growing a beard and shaving the center of his head to mimic male pattern baldness. Mahi also covered his face with a gray substance in an attempt to darken his complexion. Nonetheless, Gonzales–Torres identified Mahi as the intruder.

¶9 At trial, Mahi testified and denied involvement in the incident. A jury nevertheless convicted him of all the charges, and the trial court sentenced him to five years to life for aggravated burglary, one to fifteen years for robbery, and zero to five years for aggravated assault, all to run consecutively. Mahi appeals his convictions.

## ISSUES AND STANDARDS OF REVIEW

¶10 First, we review the trial court's refusal to consider Mahi's motion to dismiss under the speedy trial statute for correctness. See State v. Heaton, 958 P.2d 911, 914 (Utah 1998). Second, "[a] trial court has discretion to grant or deny a motion for a mistrial and its decision will remain undisturbed absent an abuse of that discretion. A defendant has the burden of persuading this court that the conduct complained of prejudiced the outcome of the trial." State v. Kohl, 2000 UT 35,¶20, 999 P.2d 7 (quotations and citation omitted). "[U]nless a review of the record shows that the court's decision is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial," we will not find an abuse of discretion. Id. Finally, when a claim of ineffective assistance of counsel is raised for the first time on appeal, as in this case, we resolve the issue as a matter of law. See State v. Strain, 885 P.2d 810, 814 (Utah Ct.App.1994).

## ANALYSIS

I. Utah's Speedy Trial Statute

¶11 Mahi first contends that the trial court failed to comply with Utah's speedy trial statute, which provides:

(1) Whenever a prisoner is serving a term of imprisonment in the state prison, jail or other penal or correctional institution of this state, and there is pending against the prisoner in this state any untried indictment or information, and the prisoner shall deliver to the warden, sheriff or custodial officer in authority, or any appropriate agent of the same, a written demand specifying the nature of the charge and the court wherein it is pending and requesting disposition of the pending charge, he shall be entitled to have the charge brought to trial within 120 days of the date of delivery of written notice.

. . . .

(4) In the event the charge is not brought to trial within 120 days . . . and defendant or his counsel moves to dismiss the action, the court shall review the proceeding. If the court finds that the failure of the prosecuting attorney to have the matter heard within the time required is not supported by good cause, whether a previous motion for continuance was made or not, the court shall order the matter dismissed with prejudice.

Utah Code Ann. § 77–29–1 (2003). "The statute is designed to protect the constitutional right of prisoners to a speedy trial and to more precisely define what is meant by speedy trial" as constitutionally guaranteed. *State v. Lindsay*, 2000 UT App 379,¶ 6, 18 P.3d 504 (quotations and citations omitted). "After a prisoner appropriately requests speedy resolution of pending charges, the burden shifts to the prosecution to commence trial within the 120–day period set out in the statute.[1] However, the request must comply with the requirements of the statute in order to be effective." *Id.* at ¶ 7 (citation omitted).

■ ¶ 12 We apply a two-step inquiry to determine whether dismissal was required under section 77–29–1. First, we "must de-termine when the 120–day period commenced and when it expired." *State v. Hankerson*, 2005 UT 47,¶ 6, 531 Utah Adv. Rep. 7 (quotations and citation omitted). Second, if it is determined that the trial was held outside the 120–day period, we determine whether good cause excused the delay. *See id.* If good cause is not shown, the case must be dismissed. *See id.*

¶ 13 As described above, Mahi executed the request on June 20, 2003, and it was signed by the authorized agent on July 15, 2003. Mahi argues that the 120 days began to run on June 20, and, in violation of the statute, 128 days transpired between that date and the commencement of trial on October 28, 2003. The prosecution, however, asserts that the 120 days commenced running on July 15, 2003, the day that the authorized agent at the jail received the notice.

¶ 14 The statute states that the 120 days begins running on the *"date of delivery* of written notice." Utah Code Ann. § 77–29–1 (emphasis added). Prior decisions of the Utah Supreme Court and this court establish that the delivery date is the date the warden or authorized agent receives and signs the notice, rather than the date it is executed or filed by the prisoner. *See Hankerson*, 2005 UT 47 at ¶ 7 (providing that disposition period was set to expire 120 days from the prison's receipt of notice, not 120 days from prisoner's execution of notice); *State v. Heaton*, 958 P.2d 911, 916 (Utah 1998) (providing that 120–day disposition period began on September 3, the date of receipt by the authorized agent, even though prisoner filed notice on August 25); *State v. Pedockie*, 2004 UT App 224, ¶ 24, 95 P.3d 1182 (stating that parties agreed that 120–day period commenced on date of prison's receipt of notice), *cert. granted*, 106 P.3d 743 (Utah 2004). We therefore conclude that here, the 120–day period must be calculated from the date the

1.  While the burden is on the prosecutor to commence trial within 120 days of a defendant's disposition request, a defendant must raise the issue in a meaningful way before the trial court. Here, Mahi waited until the beginning of trial to make his perfunctory motion to dismiss under section 77–29–1, *see* Utah Code Ann. § 77–29–1 (2003), which the judge declined to consider at that time. Moreover, Mahi did not raise the issue again at any time during the proceedings or in a motion to set aside the verdict. Under the facts of this case, where counsel waited until the morning of trial to raise the speedy trial issue, it was not unreasonable for the district judge to proceed with evidence while the jury was empaneled.

disposition notice was received by the warden or his authorized agent.

¶ 15 The trial court has not entered findings on the date the 120–day period commenced, and the defense has raised issues of fact concerning the dates reflected on the notice. Therefore, we remand to the trial court for the entry of the factual findings necessary to determine whether Mahi's right to a speedy trial has been violated.

## II.   Evidence of Mahi's Incarceration

¶ 16 Mahi next contends that the trial court abused its discretion by failing to grant a mistrial after the State introduced evidence suggesting he was incarcerated during trial. Mahi complains that in violation of rule 404(b) of the Utah Rules of Evidence,[2] two jail officials testified that they picked him up for the lineup at his jail cell and that he attempted to alter his appearance by darkening his skin and shaving his head. Mahi argues that the testimony of the jail officials is akin to compelling an accused to appear before a jury in prison clothes, in violation of his or her constitutional rights. *See State v. Kohl*, 2000 UT 35, ¶ 21, 999 P.2d 7. He asserts that the testimony that made it obvious he was incarcerated was "so potentially prejudicial as to create a substantial risk of fundamental unfairness in a criminal trial." *Chess v. Smith*, 617 P.2d 341, 344 (Utah 1980).

¶ 17 The State counters that the testimony was introduced in response to defense counsel's opening statement, which "opened the door" to this evidence. The defense argued that Mahi was made a scapegoat for the crimes because he was a prankster and an easy target. As an example of Mahi's nature, defense counsel used a blown-up photograph of Mahi at the lineup showing him dressed in prison clothes, with a partially shaved head, with an Amish-type beard, and with his face unevenly darkened with pencil lead. The State argues that it was entitled to respond to that evidence with the testimony from the jail officials. We agree. A party cannot introduce potentially inflamma-

tory evidence and then later complain when the opposing party attempts to rebut it. *See State v. Tillman*, 750 P.2d 546, 559–61 (Utah 1987); *State v. Bowman*, 945 P.2d 153, 157 (Utah Ct.App.1997).

¶ 18 The jury could have reasonably inferred from the defense's opening statement that Mahi was incarcerated. Because the theory of the defense centered around Mahi's altered and foolish appearance at the prison lineup, the jail officials were allowed to explain the events leading up to the lineup, including making reference to Mahi being picked up from his jail cell, where the use of the pencil lead was observed. The testimony of the jail officials was properly admitted to rebut the defense's discussion of the same events during opening statements. The trial court therefore did not abuse its discretion in refusing to grant a mistrial on the basis of this evidence.

## III.   Ineffective Assistance of Counsel

¶ 19 Finally, Mahi contends that his trial counsel was ineffective because he did not accept the judge's offer to give a curative instruction. After the court denied Mahi's motion for a mistrial, the judge offered to alleviate any prejudice by instructing the jury that "they [we]re to disregard the issue of [Mahi's] custody." Defense counsel did not respond to the court's offer, and Mahi now claims this was a violation of his Sixth Amendment right to effective assistance of counsel.

¶ 20 To prevail on this claim, Mahi must establish both parts of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, he must show that "his counsel's performance 'fell below an objective standard of reasonableness.' " *State v. Strain*, 885 P.2d 810, 814 (Utah Ct.App.1994) (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). Second, he must demonstrate that "counsel's performance prejudiced [him]." *Id.* To meet the first prong of the *Strickland* test, Mahi must point to specific instances in the record

---

2. In relevant part, rule 404(b) states: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Utah R. Evid. 404(b).

where assistance was inadequate and also "must overcome 'a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.' " *Id.* (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). We do not "second-guess trial counsel's legitimate strategic choices, however flawed those choices might appear in retrospect." *Id.* (quotations and citations omitted). Because of this strong presumption of competence, we need not find that counsel followed a specific trial strategy; rather, "we need only articulate some plausible strategic explanation for counsel's behavior." *State v. Tennyson,* 850 P.2d 461, 468 (Utah Ct.App. 1993). "[A]n ineffective assistance claim succeeds only when no conceivable legitimate tactic or strategy can be surmised from counsel's actions." *Id.*

¶ 21 Mahi cannot meet the first *Strickland* prong. It is plausible, and even likely, that trial counsel did not respond to the judge's offer to instruct the jury about the incarceration evidence because he did not want to draw further attention to the testimony. This tactic was legitimate, and thus, we cannot agree with Mahi that counsel's performance fell below an objective standard of reasonableness. We therefore reject Mahi's ineffective assistance claim.

## CONCLUSION

¶ 22 The calculation of 120 days for purposes of Utah's speedy trial statute commences on the date the notice of disposition is received by the warden or his agent. This matter is remanded to the trial court for the entry of findings and conclusions on whether the State tried Mahi within 120 days of the receipt of that notice. The trial court did not abuse its discretion by failing to grant a mistrial based on the admission of evidence of Mahi's incarceration during trial, because Mahi himself "opened the door" to this testimony. Finally, Mahi's trial counsel was not ineffective because he exercised a legitimate trial strategy by failing to accept the trial court's offer to give a curative jury instruction. Accordingly, we affirm in part and remand for further proceedings consistent with this opinion.

¶ 23 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.