STATE of Utah, Plaintiff and Appellee

v.

John M. HEATON, Defendant
and Appellant.

No. 950238.

Supreme Court of Utah.

May 1, 1998.

Jan Graham, Att'y Gen., Kris Leonard, Asst. Att'y Gen., Salt Lake City, for plaintiff and appellee.

Candace S. Bridgess, Kent E. Snider, Ogden, for defendant and appellant.

RUSSON, Justice:

## INTRODUCTION

Defendant John M. Heaton appeals a judgment entered on a jury verdict finding him guilty of aggravated robbery, a first degree felony, and evading arrest, a third degree felony. We reverse.

## BACKGROUND

Because some of the dates corresponding to the facts in this case are critical to the resolution of this appeal, we provide a detailed chronological summary of the relevant events.

On July 13, 1994, Heaton was arrested for the robbery of an Albertson's grocery store in Roy, Utah. The next day, Heaton waived his right to a preliminary hearing and was bound over to district court. Heaton was a parolee at the time, and on July 26, he was returned to the Utah State Prison for violating his parole. Heaton also qualified for public assistance and was appointed counsel from the public defender's office. On August 2, Heaton appeared in district court for arraignment, at which time he pleaded "not guilty" to the charges and the judge set a pretrial conference for August 30 and a jury trial for September 9. On August 25, while incarcerated at the prison, Heaton filed a written request for final disposition of all matters pending against him pursuant to Utah Code Ann. § 77–29–1 (the "detainer statute"), which requires the prosecutor to bring pending charges against a prisoner to trial within 120 days from the date the notice is delivered to certain state officials or their agents. An authorized agent at the prison received Heaton's notice on September 3.[1]

At his pretrial conference on August 30, Heaton requested a preliminary hearing, which he had initially waived. The prosecution had no objection, and the parties and the court agreed to hold a preliminary hearing on September 9, the date for which the trial had initially been set. At the September 9 preliminary hearing, the court found that probable cause existed and set a second arraignment for September 27. At the second arraignment, Heaton requested that the judge recuse himself on the basis that the judge had also presided over Heaton's preliminary hearing. The judge recused himself and ordered the case reassigned. However, as a result of an error in the district court

clerk's office, the case was not reassigned. In late November 1994, after receiving inquiry by a witness regarding the trial date, the prosecutor contacted the district court for a status report, whereupon the clerk's office discovered the error and reassigned the case to a different judge as previously ordered.

On November 28, the district court sent the parties a notice of a trial-scheduling conference set for December 7. At that conference, the court initially attempted to set the trial date for January 19, 1995. However, because both defense counsel and the prosecutor had a scheduling conflict, the court set the trial for the next available date suitable for all the parties, February 16 and 17, 1995.[2]

Subsequent to the trial-scheduling conference on December 7, 1994, Heaton sent a letter to the court requesting new counsel. On February 8, 1995, the court held a hearing to address Heaton's request, which was based in part on his defense counsel's refusal to bring a motion to dismiss pursuant to the detainer statute. The court denied Heaton's request. On February 16, 1995, after reevaluating Heaton's claim, Heaton's defense counsel moved to dismiss pursuant to the detainer statute. The court, however, found that at least 60 days of the 71–day delay— i.e., the period between the second arraignment and the trial-scheduling conference— were attributable to the administrative error in the clerk's office. This delay, the court concluded, constituted "good cause" under the statute, and the court therefore denied the motion.

Although originally scheduled for February 16 and 17, 1995, the trial was not actually held until April 20 and 21, 1995.[3] Before trial, Heaton filed a pro se motion requesting that the judge recuse himself and requesting new counsel. A hearing was held on April 19, 1995, and the judge denied both requests.

During the hearing, Heaton indicated that he did not feel he was receiving adequate legal representation and that he felt forced to

---

1. The prosecutor's office received the notice on September 8. The record does not indicate whether the district court received Heaton's detainer notice; however, the prosecutor stated that he believed the court probably received the notice on September 8, 1994.

2. Defense counsel and the prosecutor were working on another criminal trial in mid-January.

3. The reasons for the trial delay from February to April are not pertinent to this appeal.

proceed on his own. His attorney indicated that a "rift" had developed between them, that he was uncomfortable going to trial because of the "total conflict" between them, and that he thought Heaton wanted to represent himself. Heaton did not assert his right to self-representation, and the judge did not ask Heaton whether he wished to waive his right to counsel. Instead, the judge (1) advised Heaton of his right to self-representation, (2) refused to permit Heaton's counsel to withdraw, (3) indicated to Heaton that he was requiring counsel to remain as standby counsel to assist Heaton if he wanted the assistance, and (4) indicated that Heaton was free to choose to handle trial matters on his own but that the court would make a record of Heaton's decision to proceed pro se.

Although Heaton's defense counsel assisted Heaton in selecting the jury, Heaton represented himself at trial. The jury convicted Heaton on both charges, and he was sentenced to serve concurrent terms of five years to life and zero to five years at the Utah State Prison, such terms to be served consecutively to any sentences Heaton was already serving.

On appeal, Heaton alleges the following errors: (1) the trial court erred in denying his motion to dismiss pursuant to the detainer statute; (2) he was denied his constitutional right to counsel; (3) he was denied his constitutional right to effective assistance of counsel; and (4) the prosecutor's misconduct during closing argument constituted reversible error.

## STANDARDS OF REVIEW

■ The trial court's decision to deny Heaton's motion to dismiss was based on its legal conclusion that under the detainer statute the clerk's administrative mistake could excuse the prosecutor's duty to bring Heaton's charges to trial within the 120–day period. Because this is a legal, rather than a factual, conclusion, we review the trial court's decision for correctness. *See State v. Petersen*, 810 P.2d 421, 425 (Utah 1991).

■ Whether a waiver of counsel was made knowingly and intelligently is a mixed question of law and fact. We review the trial

court's legal determinations for correctness. *See State v. Pena*, 869 P.2d 932, 937–39 (Utah 1994); *Harding v. Lewis*, 834 F.2d 853, 857 (9th Cir.1987).

## ANALYSIS

■ Heaton first argues that the trial court erred in denying his motion to dismiss pursuant to the detainer statute. That statute provides, in relevant part:

(1) Whenever a prisoner is serving a term of imprisonment in the state prison, jail or other penal or correctional institution of this state, and there is pending against the prisoner in this state any untried indictment or information, and the prisoner shall deliver to the warden, sheriff or custodial officer in authority, or any appropriate agent of the same, a written demand specifying the nature of the charge and the court wherein it is pending and requesting disposition of the pending charge, *he shall be entitled to have the charge brought to trial within 120 days of the date of delivery of written notice.*

. . . .

(3) After written demand is delivered as required in Subsection (1), *the prosecuting attorney or the defendant or his counsel, for good cause shown in open court,* with the prisoner or his counsel being present, *may be granted any reasonable continuance.*

(4) In the event the charge is not brought to trial within 120 days, or within such continuance as has been granted, and defendant or his counsel moves to dismiss the action, the court shall review the proceeding. *If the court finds that the failure of the prosecuting attorney to have the matter heard within the time required is not supported by good cause, whether a previous motion for continuance was made or not, the court shall order the matter dismissed with prejudice.*

Utah Code Ann. § 77–29–1(1), (3), & (4) (emphasis added).

In denying Heaton's motion to dismiss, the district court made the following ruling:

[T]his Court is going to deny the Defendant's [motion on] the basis that I believe

that there has been good cause[.] And that term doesn't quite fit in this situation, but explainable cause shown as to why the delay occurred. And the Court does not find in any way that it was as a result of the prosecution's dragging its feet.

. . . .

The facts are that the bulk of the delay, 60 days at least of it, was the fault probably of the Clerk's office in this case. And again I don't know whether that fits into what could be called a good cause shown, but the Court believes that it happens from time to time, that there can be that kind of a glitch.

And certainly the Defendant could have pushed to find out why his case had not been set for trial. [He] [c]ould have pushed his counsel to make that request, [a]nd was in the same position [as was] the State. . . .

The case sat. And it is unfortunate it did, but the Court will deny the motion at this time.

The district court's ruling contradicts section 77–29–1 and our prior case law. The statute requires the prosecutor "to have the matter heard within the time required." Utah Code Ann. § 77–29–1(4). Moreover, this court has consistently held that the language of the detainer statute clearly places the burden of complying with the statute on the prosecutor. *See Petersen*, 810 P.2d at 424; *State v. Wilson*, 22 Utah 2d 361, 453 P.2d 158, 160 (1969). In *Petersen*, the trial court asked the defendant whether the trial date was acceptable, and the defendant did not object to the date, which was outside the 120–day period. Nevertheless, this court concluded that the defendant was not required to object to the trial date in order to maintain his rights under the statute because the burden of bringing the case to trial within the disposition period rested solely with the prosecution. 810 P.2d at 424. Thus, in the case at bar, the court clearly erred in concluding that Heaton was in the same position as was the State and therefore shared some of the responsibility to find out why his case had not been set for trial.

■ The trial court further erred in its legal conclusion that the 71–day delay, most of which was occasioned by the court clerk's error, constituted "good cause" and thereby relieved the prosecutor of its burden under the statute. We first note that the judge's finding that the State did not contribute to the delay carries little significance. The mere fact that the delay was not caused by the prosecutor has never been considered dispositive because "to hold that good cause is supported by the lone fact that the delay was not caused by the prosecutor would contradict the language in section 77–29–1(4) which places the burden of complying with the statute on the prosecution." *Id.* at 426; *see also Wilson*, 453 P.2d at 159–60 (reversing trial court's decision not to dismiss, notwithstanding fact that prosecution did not cause delay).

■ The State argues that while it could have followed up on the case earlier, "defendant cites no precedent for attributing to the prosecutor the responsibility for anticipating or preventing unexpected and infrequent administrative mistakes made by court personnel." We agree with the State that it is not responsible for the administrative mistakes of the court. Nevertheless, it *is* responsible for complying with section 77–29–1. Because the statute places on the prosecutor *alone* the burden of bringing the case to trial within the 120–day period, the prosecutor's duty must be independent of the court's docketing system. While Heaton's case fell victim to an administrative "glitch" at the clerk's office, his case also fell through a crack in the prosecutor's office. Even though the prosecutor's office received Heaton's detainer notice on September 8, 1994, neither the briefs nor our review of the record indicates that the prosecutor even addressed Heaton's detainer notice to the court until February 16, 1995, after the disposition period had already expired. When a prisoner delivers a written notice pursuant to the detainer statute, the prosecutor has an affirmative duty to have the defendant's matter heard within the statutory period. Implicit in this duty is the duty to notify the court that a detainer notice has been filed and to make a good faith effort to comply with the statute. This is not to say that the prosecutor must succeed, for "good cause" may support the prosecutor's

failure to comply. However, where the prosecutor's failure is inaction—in this case, doing nothing whatsoever to bring Heaton's case to trial within the statutory period—the trial court may not conclude that the prosecutor's failure is supported by "good cause."

▉ Nevertheless, even if the lower court erred in its legal conclusions, this court may affirm a trial court's decision on any reasonable legal basis, provided that any rationale for affirmance finds support in the record. See K & T, Inc. v. Koroulis, 888 P.2d 623, 628 (Utah 1994); Hill v. Seattle First Nat'l Bank, 827 P.2d 241, 246 (Utah 1992). Deciding whether the district court properly denied Heaton's motion to dismiss pursuant to the detainer statute requires a two-step inquiry. First, we must determine when the 120–day period commenced and when it expired. Second, if the trial was held outside the 120–day period, we must then determine whether "good cause" excused the delay.

▉ The detainer statute clearly provides that the 120–day period commences on the date the written notice is delivered "to the warden, sheriff or custodial officer in authority, or any appropriate agent of the same." Utah Code Ann. § 77–29–1(1); see also State v. Viles, 702 P.2d 1175, 1176 (Utah 1985) (holding that 120–day disposition period commences from date of delivery of written notice to warden, not from date defense counsel files notice of appearance). However, this court has held that when a prisoner himself acts to delay the trial, he indicates his willingness to temporarily waive his right to a speedy trial. Thus, the disposition period must be extended by the amount of time during which the prisoner himself creates the delay. See State v. Velasquez, 641 P.2d 115, 116 (Utah 1982) (concluding that where defendant's trial date was originally scheduled less than one month after defendant's request for disposition and court granted defendant's request for continuance, defendant was responsible for number of days during which continuance was granted and could not include those days in disposition period).

In the case at bar, the 120–day disposition period commenced on September 3, 1994, because that is the date on which an autho-

rized agent at the prison received Heaton's written notice. However, Heaton did cause a trial delay. As set forth above, the court initially scheduled trial for September 9, 1994. At his pretrial conference on August 30, Heaton requested a preliminary hearing, which he had initially waived. The prosecutor having no objection, the court granted Heaton's request, changing the trial date to the preliminary hearing date. But for Heaton's request for a preliminary hearing, his case would have been brought to trial on September 9, just 6 days after his written notice had been delivered. Thus, Heaton delayed his own trial and indicated his willingness to temporarily waive his rights under the detainer statute. See Velasquez, 641 P.2d at 116.

When the court changed Heaton's trial date to the preliminary hearing date, in effect it continued Heaton's trial pending the outcome of the preliminary hearing. Had the court not found probable cause at the hearing, it would have had to dismiss the charges. See Utah R.Crim.P. 7(h)(3). However, the court did find probable cause and therefore scheduled a second arraignment for September 27. The court could not set a new trial date until Heaton entered his pleas at the second arraignment. Thus, because Heaton's trial date was continued for the purpose of accommodating his request for a preliminary hearing, and because a new trial date could not even have been considered until the second arraignment, Heaton may not include the 18 days between September 9 and September 27 as part of the 120–day disposition period.

Excluding the 18–day delay attributable to Heaton, the State had until January 19, 1995, to bring Heaton to trial. Although the court initially attempted to set the trial for January 19, 1995, it scheduled the trial beyond the disposition period because of the defense counsel's and prosecutor's scheduling conflict. Therefore, we must proceed to step two of our inquiry to determine whether continuing the trial to accommodate, in part, defense counsel's schedule constitutes "good cause" under section 77–29–1.

A nearly identical issue was raised in *State v. Bonny*, 25 Utah 2d 117, 477 P.2d 147 (1970), wherein the initially scheduled trial date fell within the disposition period, but because defense counsel had a scheduling conflict the court rescheduled the trial for five days beyond the disposition period. This court concluded that section 77–65–1, the predecessor to section 77–29–1,[4] permitted the court to grant "'for a good cause shown in open court ... any necessary or reasonable continuance.'" *Bonny*, 477 P.2d at 147–48 (quoting Utah Code Ann. § 77–65–1). Thus, because the trial was rescheduled at defense counsel's request and to accommodate his schedule, this court held that the trial court had authority to grant such a continuance, which was "entirely reasonable and practical under the circumstances." *Id.* at 148.

Because section 77–29–1(3) contains substantially the same language as section 77–65–1 and gives the court discretion to grant continuances, the reasoning in *Bonny* is applicable to the case at bar. The January 19, 1995, date initially offered by the trial court fell within the 120–day disposition period, and the court was therefore within its authority to grant a reasonable continuance under section 77–29–1(3) to accommodate defense counsel's schedule. In light of the other criminal trial both defense counsel and the prosecutor were engaged in, setting Heaton's trial one month beyond the disposition period was not unreasonable. Therefore, we hold that while the district court erred in its legal conclusions, extending the trial date to a reasonable time outside the disposition period to accommodate, in part, defense counsel's schedule constitutes "good cause" under section 77–29–1(3) and (4), and the trial court correctly denied Heaton's motion to dismiss.

We next address Heaton's argument that he did not knowingly and intelligently waive his constitutional right to appointed counsel. The Sixth Amendment to the United States Constitution guarantees an accused the right to the assistance of counsel. *See Gideon v. Wainwright*, 372 U.S. 335, 342–44, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Johnson v. Zerbst*, 304 U.S. 458, 462–63, 58

S.Ct. 1019, 82 L.Ed. 1461 (1938). If an accused is indigent, he is entitled to court-appointed counsel. *See State v. Wulffenstein*, 733 P.2d 120, 121 (Utah 1986). However, the Sixth Amendment also guarantees an accused the right to self-representation, "provided only that he [or she] knowingly and intelligently forgoes his [or her] right to counsel." *McKaskle v. Wiggins*, 465 U.S. 168, 173, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *see also Faretta v. California*, 422 U.S. 806, 807, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The right to have the assistance of counsel in a criminal trial is a fundamental constitutional right which must be jealously protected by the trial court. The United States Supreme Court has stated:

> The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. *This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.*

*Johnson*, 304 U.S. at 465, 58 S.Ct. 1019 (emphasis added). Because of the importance of the right to counsel and the heavy burden placed upon the trial court to protect this right, there is a presumption against waiver, and doubts concerning waiver must be resolved in the defendant's favor. *See, e.g., Johnson*, 304 U.S. at 464, 58 S.Ct. 1019 ("'[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights." (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937))); *United States v. Williamson*, 806 F.2d 216, 220 (10th Cir.1986) (doubts concerning waiver of counsel must be resolved in defendant's favor).

When a trial court is confronted with a defendant who either refuses to proceed to trial with appointed counsel or insists on proceeding pro se, the court must carefully consider the defendant's right to self-representation with his right to counsel. Nevertheless, before the court may permit the

---

**4.** Section 77–29–1, enacted in 1980, replaced section 77–65–1.

defendant to proceed without the assistance of counsel, the court must conduct a thorough inquiry of the defendant to fulfill its duty of insuring that the defendant's waiver of counsel is· knowingly, intelligently, and voluntarily made. In making this determination, the court must advise the defendant of the dangers and disadvantages of self-representation "so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)); *see Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *State v. ·Frampton,* 737 P.2d 183, 187–88 (Utah 1987). In addition, the trial court should (1) advise the defendant of his constitutional right to the assistance of counsel, as well as his constitutional right to represent himself; (2) ascertain that the defendant possesses the intelligence and capacity to understand and appreciate the consequences of the decision to represent himself, including the expectation that the defendant will comply with technical rules and the recognition that presenting a defense is not just a matter of telling one's story; and (3) ascertain that the defendant comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case. *See State v. Frye,* 224 Conn. 253, 617 A.2d 1382, 1386–87 (1992); *see also Frampton,* 737 P.2d at 187–88.[5]

This court stated in *Frampton* that a colloquy on the record between the court and the defendant is the preferred method of determining the validity of a waiver of counsel. *Frampton,* 737 P.2d at 187. The reasoning behind this conclusion is that the information necessary for the court to make its determination generally "can only be elicited after penetrating questioning by the trial court." *Id.; see also Von Moltke,* 332 U.S. at 724, 68 S.Ct. 316 ("A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances."). In *Frampton,* we also stated that in the absence of such a colloquy, we will look at any evidence in the record to determine whether the particular facts and circumstances support a valid waiver. 737 P.2d at 188.

However, in light of the foregoing discussion, this court is reluctant to assume the important responsibility which has been placed upon the trial court. After all, the trial court—having the benefit of questioning the defendant and observing his demeanor—is in the best position to determine whether the defendant knowingly, voluntarily, and intelligently waived his right to counsel. In contrast, this court's proper role is to review the trial court's findings and conclusions and then determine whether the trial court correctly concluded that the defendant validly waived counsel. A meaningful review of the trial court can take place only after that court has conducted a meaningful inquiry of the defendant. Therefore, in the absence of such a colloquy, this court will look at the record and make a de novo determination regarding the validity of the defendant's waiver only in extraordinary circumstances, the existence of which we will address on a case-by-case basis. *See Harding,* 834 F.2d at 857.

In the case at bar, the trial court clearly did not advise Heaton of the dangers and disadvantages of self-representation. The day before trial, during the hearing addressing Heaton's motion for new counsel, the trial judge stated:

Now, with respect to counsel, you do have the right to represent yourself. I am not going to allow Mr. Caine's withdrawal at this point. Mr. Caine is a capable defense attorney. He is very familiar with the facts in your case. I am going to require that he remain on as counsel to assist you if you want the assistance.

---

5. In *Frampton,* as a guide for trial courts, this court quoted a sixteen-point colloquy recommended to the federal courts for use when confronting a prospective pro se defendant. *Frampton,* 737 P.2d at 187–88 n. 12 (citing Bench Book for United States District Court Judges, vol. 1, §§ 1.02–2 to –5 (Federal Judicial Center, 3d ed. 1986)). Once again, we strongly recommend that trial courts use that approach, as it is an effective means by which to determine whether the defendant has validly waived his right to counsel.

. . . .

Mr. Heaton, if during the process of the Jury selection, and the defense that you want to present during the trial, you want to handle that on your own, you are free to do that. And you will be making that decision as you go. We will make a record of your decision to handle those matters on your own if that's your choice.

My recommendation to you is that you rely on Mr. Caine's expertise and experience and have him help you. But you can make that choice.

The court's cursory recommendation to Heaton to rely on defense counsel did not apprise Heaton in any way of the constitutional significance of the right to counsel and the consequences of waiver. The State argues that Heaton should have been aware of the dangers and disadvantages of self-representation because on the day of trial, after the jury had been selected, the court strongly advised Heaton to allow defense counsel to cross-examine the State's witnesses inasmuch as Heaton would certainly not be as effective as defense counsel. While the court's advice was certainly appropriate, it addressed only one of the disadvantages of self-representation—i.e., not having experience and expertise in cross-examining witnesses. Moreover, the trial court had already determined that Heaton had decided to represent himself. As we have previously mentioned, before a trial court may permit a defendant to proceed pro se, the court must determine whether the defendant competently waived counsel at the time of waiver, not after.

We therefore hold that because the trial court failed to advise Heaton, at a minimum, of the dangers and disadvantages of self-representation, Heaton did not validly waive his constitutional right to counsel. The trial court erred in permitting Heaton to proceed pro se, and Heaton is entitled to a new trial. There are no extraordinary circumstances in this case which would justify our examination of the record and making a de novo determination as to whether Heaton knowingly and intelligently waived his right to counsel. Moreover, because the waiver of counsel issue is dispositive of this appeal, we need not address Heaton's other arguments.

We reverse Heaton's convictions and order a new trial.

HOWE, C.J., DURHAM, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur in Justice RUSSON's opinion.