2000 UT App 379

**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael Cole LINDSAY, Defendant and Appellant.**

**No. 990739–CA.**

Court of Appeals of Utah.

Dec. 29, 2000.

Kristine M. Rogers, Salt Lake City, for Appellant.

Jan Graham, Kris C. Leonard, and Scott W. Reed, Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 Defendant Michael Cole Lindsay entered guilty pleas on various drug-related felonies. Lindsay conditioned his pleas of guilt on his right to appeal the trial court's conclusion regarding his statutory right to a speedy trial pursuant to Utah Code Ann. § 77–29–1 (1999). *See State v. Sery,* 758 P.2d 935, 939 (Utah Ct.App.1988). Lindsay, who lodged an invocation of his speedy trial right with the prison warden, argues the claims against him should have been dismissed for violation of the statute. We disagree and affirm.

## BACKGROUND

¶ 2 On July 23, 1998, Lindsay, who was on parole at the time, was arrested and booked on several charges. Soon thereafter his parole was revoked, and he was returned to prison.[1] On October 6, 1998, after his reincarceration, Lindsay filed a "Notice and Request for Disposition of Pending Charges," pursuant to Utah Code Ann. § 77–29–1 (1999). Section 77–29–1 states, in relevant part, with our emphasis:

> (1) Whenever a prisoner is serving a term of imprisonment in the state prison, jail or other penal or correctional institution of this state, and there is pending against the prisoner in this state *any untried indictment or information,* and the prisoner shall deliver to the warden, sheriff or custodial officer in authority, or any appropriate agent of the same, a written demand specifying the nature of the charge and the *court* wherein it is pending and requesting disposition of the pending charge, he shall be entitled to have the charge brought to *trial* within 120 days of the date of delivery of written notice.

> . . . .

> (4) In the event the charge is not brought to *trial* within 120 days, or within such continuance as has been granted, and defendant or his counsel moves to dismiss the action, *the court* shall review the proceeding. If *the court* finds that the failure of the *prosecuting attorney* to have the mat-

---

1. Lindsay has applied himself to constructive pursuits while in prison. He is a member of a highly-regarded inmate fire-fighting team called the Flame-n-go's. While fighting a fire in the Stansbury Mountains on August 23, 2000, a Flame-n-go's crew, including Lindsay, was struck by lightning. Lindsay was knocked unconscious. When he came to, he discovered team members Michael Bishop and Rodgie Braithwaite lying on the ground. He and the other survivors feverishly administered CPR, ultimately to no avail. Bishop and Braithwaite were the first Flame-n-go's to die in the line of duty in the group's 22–year history. *See The Salt Lake Tribune,* August 24, 2000, at A–1; *The Deseret News,* August 25, 2000, at B–1. Without in any way condoning the conduct that led to their incarceration, we salute the Flame-n-go's, the sacrifice of their fallen comrades, and Lindsay's devotion to duty.

ter heard within the time required is not supported by good cause, whether a previous motion for continuance was made or not, *the court* shall order the matter dismissed with prejudice.

¶3 The information formally charging Lindsay with the crimes for which he was arrested on July 23, 1998, was not filed until March 2, 1999, almost five full months after he filed his disposition request. On April 6, 1999, Lindsay moved to dismiss the charges against him, alleging the 120–day statutory time frame had begun to run when he filed his disposition request with the warden and thus had long since expired. On May 3, the magistrate denied his motion to dismiss. After bindover, Lindsay renewed his motion to dismiss in the district court. On July 16, the district court denied the motion to dismiss and adopted the magistrate's findings, conclusions, and order. On July 20, 1999, Lindsay entered his conditional guilty pleas. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

■ ¶4 Lindsay argues the district court misinterpreted Utah Code Ann. § 77–29–1 (1999) by refusing to dismiss the charges pending against him because more than 120 days had transpired between when he tendered his disposition request and when his trial was scheduled to commence. Matters of statutory interpretation present questions of law which we review for correctness, according no particular deference to the trial court's interpretation. *See State v. Harley,* 1999 UT App 197,¶¶ 9–10, 982 P.2d 1145, *cert. denied,* 994 P.2d 1271 (Utah 1999).

■ ¶5 In reviewing the trial court's application of section 77–29–1, we apply longstanding rules of statutory construction. "This court's primary objective in construing enactments is to give effect to the legislature's intent." *Gohler v. Wood,* 919 P.2d 561, 562 (Utah 1996). " 'When examining a statute, we look first to its plain language as the best indicator of the legislature's intent and purpose in passing the statute.' " *Holmes v.*

*American States Ins. Co.,* 1 P.3d 552, 2000 UT App 85,¶ 10, 391 Utah Adv. Rep. 16 (quoting *Wilson v. Valley Mental Health,* 969 P.2d 416, 418 (Utah 1998)). Therefore, "where the statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent." *Horton v. Royal Order of the Sun,* 821 P.2d 1167, 1168 (Utah 1991).

## ANALYSIS

■ ¶6 Utah Code Ann. § 77–29–1 (1999), known as the detainer statute, is designed to promote the prompt prosecution of charges against prisoners, "to prevent those charged with enforcement of criminal statutes from holding over the head of a prisoner undisposed of charges against him." *State v. Wilson,* 22 Utah 2d 361, 453 P.2d 158, 159 (1969). The statute, while not supplanting other statutes of limitation for various crimes,[2] encourages trials "while witnesses are available and their memories are fresh." *Id.* The statute is designed to "protect the constitutional right of prisoners to a speedy trial," *State v. Viles,* 702 P.2d 1175, 1176 (Utah 1985), and to "more precisely define what is meant by 'speedy trial,' " as constitutionally guarantied. *Wilson,* 453 P.2d at 159.

■ ¶7 After a prisoner appropriately requests speedy resolution of pending charges, the burden shifts to the prosecution to commence trial within the 120–day period set out in the statute. *See State v. Petersen,* 810 P.2d 421, 424 (Utah 1991). However, the request must comply with the requirements of the statute in order to be effective. *See State v. Wright,* 745 P.2d 447, 450–51 (Utah 1987).

¶8 Lindsay argues the trial court erred in denying his motion to dismiss. In denying the motion, the trial court adopted the magistrate's conclusion:

The Court finds that the 120 day requirement of Utah Code Annotated § 77–29–1 et seq. is triggered by an information or indictment existing or pending against the defendant. The date of defendant's

---

**2.** The Utah Supreme Court long ago determined that the time limit in the detainer statute did not create a different statute of limitation for incar-

cerated individuals. *See State v. Farnsworth,* 30 Utah 2d 435, 519 P.2d 244, 246 (1974).

arrest and/or his filing of a request for disposition of detainer prior to charges being filed is irrelevant for purposes of calculating the time requirement set forth in § 77–29–1.

The district court, in effect, concluded Lindsay's request for disposition was premature, and thus not properly tendered, because no information had been filed, and thus was not officially pending, when the request was made.

¶ 9 "Deciding whether the district court properly denied [Lindsay's] motion to dismiss pursuant to the detainer statute requires a two-step inquiry. First, we must determine when the 120–day period commenced and when it expired." *State v. Heaton*, 958 P.2d 911, 916 (Utah 1998). "Second, if the trial was held outside the 120–day period, we must then determine whether 'good cause' excused the delay." *Id.* In this case, we must decide whether the 120–day period was properly triggered by Lindsay's request for disposition, which followed his arrest but preceded the filing of an information against him. Our answer obviates any need to move to the second step of analysis.

¶ 10 The plain language of the detainer statute provides that the 120–day period commences on the date the written notice is delivered "to the warden, sheriff or custodial officer in authority, or any appropriate agent of the same." Utah Code Ann. § 77–29–1(1) (1999). No one disputes that Lindsay made such a request on October 6, 1998. However, formal charges must be pending against him when the request is delivered. It is not appropriate to tender a request in anticipation of forthcoming charges, as the statute speaks in terms of an untried information "pending against the prisoner."[3] *Id.*

¶ 11 "Pending" is defined as "[r]emaining undecided; awaiting decision." *Black's Law Dictionary* 1154 (7th ed.1999). It is also de-

fined as "[t]hroughout the continuance of; during." *Id.* Facing a similar question of interpretation regarding whether a judge had made an inappropriate comment during a "pending proceeding," the Utah Supreme Court recently said:

> Although the Code of Judicial Conduct does not define "pending proceeding," the meaning of the term is easily understood. "Pending," by definition, means "begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment." Black's Law Dictionary 1291 (rev. 4th ed.1968).

*In re Young*, 1999 UT 81, ¶ 33 n. 7, 984 P.2d 997.

¶ 12 The problem with Lindsay's request is that, although parole revocation proceedings were in process, at the time he made his request there were no criminal charges pending against him for which he could be tried in court.[4] An action cannot be pending when it is yet to be commenced. As explained, with our emphasis, in the rules,

> [u]nless otherwise provided, all criminal prosecutions whether for felony, misdemeanor or infraction shall be *commenced* by the filing of an information or the return of an indictment. Prosecution by information shall be commenced before a magistrate having jurisdiction of the offense alleged to have been committed unless otherwise provided by law.

Utah R.Crim.P. 5(a). Thus, without such an official filing, there were no charges "pending" against Lindsay on October 6, 1998. The 120–day period could not commence until March 2, 1999, the day the information charging him was filed.

¶ 13 While an arrest is not a meaningless gesture, the statute does not in any way suggest a mere arrest is adequate to trigger

---

**3.** The decision to bring charges at all is in the prosecutor's discretion. In many cases a defendant might be able to anticipate which charges are likely to be officially filed, but until the time of filing, no one can be certain what action the prosecutor will take. Therefore, logically, it makes no sense to start the 120–day period with a defendant's merely anticipatory request for disposition.

**4.** The Utah Supreme Court has previously recognized that reincarceration as a result of a parole violation, standing alone, does not trigger a defendant's speedy trial right regarding a different crime. *See State v. Smith*, 699 P.2d 711, 713 (Utah 1985).

the 120–day period. Rather, the statute specifically states that the action must relate to a "pending . . . untried indictment or information."[5] Utah Code Ann. § 77–29–1 (1999). Before charges are formally brought in an information, which eventually occurred in this case, the prosecution follows several steps that had not taken place when Lindsay made his request for disposition. *See State ex rel. Cannon v. Leary*, 646 P.2d 727, 730 (Utah 1982) (detailing how prosecutor first screens case, authorizes prosecution by signing information, presentment of information to magistrate, subscribing and swearing to information by complaining witnesses, and finally filing information with clerk of court). Whether—and with what—the prosecution would charge Lindsay were questions "pending" in one sense of the term when Lindsay made his request. But according to the plain language of the statute, an *"indictment or information"* must have been brought so that it was "pending" against Lindsay; the mere possibility of such was simply not enough. Utah Code Ann. § 77–29–1 (1999) (emphasis added).[6]

■ ¶ 14 Moreover, a premature request for disposition does not later "kick in" once the information is ultimately filed or the indictment returned. A premature request is simply a nullity, having no legal effect. *Cf. State v. Wright*, 745 P.2d 447, 450–51 (Utah 1987) (While finding no actual request for disposition was filed, Court concluded, none-

theless, that "at the time the [alleged request for disposition] was sent, defendant had not yet been charged with the . . . robbery, and no untried indictment or information was pending against defendant. Thus, nothing triggered the statutory right to demand trial on any 'untried indictment or information.' ") (citation omitted); *State v. Clark*, 28 Utah 2d 272, 501 P.2d 274, 276 (1972) (recognizing as persuasive *State ex rel. Dennis v. Morphonios*, 252 So.2d 845 (Fla.Ct.App.1971), and citing its holding that any request for disposition filed "before" the charging information "is a nullity").

■ ¶ 15 The purpose of the statute is to promote speedy trials, not the speedy filing of informations. Lindsay's request came too early in the process—defendants must await the filing of an information or the return of an indictment for an action to be officially pending. Lindsay jumped the gun, and his request for disposition had no legal effect. Lindsay was entitled to file a valid request for disposition only after the information was filed.

### CONCLUSION

¶ 16 Charges cannot be pending against a defendant until an indictment or information is filed with the court. Therefore, Lindsay's motion to dismiss was properly denied by the district court. Moreover, such a request, if filed before charges are pending, is a nullity,

---

**5.** Defendant's parole revocation proceeding featured a document entitled "Information on Parole Violation," generated on August 3, 1998. Such an "information" is not the sort contemplated in the statute. The statute refers to "trial within 120 days" and "the court wherein [the information or indictment] is pending," thus making it clear the statute refers only to the traditional and statutorily identified "information" used to commence a criminal proceeding. Significantly, no document formally entitled an "information" is required to commence parole revocation proceedings, *see* Utah Code Admin.P. R671–405–1, R671–509–1 to –516 (2000), and Adult Probation and Parole's choice of terms in captioning the document, while inadvertently adding an additional layer of intrigue to our resolution of when an "information" is "pend-

ing" for purposes of section 77–29–1, is of no moment.

**6.** While we conclude a case must first be "pending" to invoke the 120–day period, there are limits. For example, as the Utah Supreme Court recognized under a previous version of the statute, when a pending case is dismissed after a defendant has filed his request that the pending charges be disposed of, and the prosecution then refiles, the new "complaint, information or indictment does not affect the commencement of" the original 120–day period. *State v. Moore*, 521 P.2d 556, 558 (Utah 1974) (applying Utah Code Ann. § 77–65–1(a) (1953) with its 90–day period for commencement of trial). Such manipulative tactics would not restart the 120–day clock, even though the case, after its first dismissal, would not technically still be "pending."

having no legal effect, including when the charges are later officially filed.

¶ 17   Affirmed.

¶ 18   WE CONCUR: Judith M. Billings, Judge, William A. Thorne, Jr., Judge.