2001 UT App 281

**STATE of Utah, Appellant,**

v.

**Larry Dean COLEMAN, Appellee.**

No. 20000626–CA.

Court of Appeals of Utah.

Sept. 27, 2001.

James A. Valdez and Heather Johnson, Salt Lake Legal Defender Association, Salt Lake City, for Appellee.

Before Judges JACKSON, BILLINGS, and DAVIS.

## OPINION

JACKSON, Associate Presiding Judge:

### INTRODUCTION

¶ 1 The State appeals the trial court's order granting Larry Dean Coleman's (Defendant) motion to dismiss charges of operation of a clandestine laboratory, a first degree felony, in violation of Utah Code Ann. §§ 58–37d–4(1), –5(1) (1998); possession of a controlled substance with intent to distribute, a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(iii) (Supp.2000); [1] and possession of drug paraphernalia, a class B misdemeanor, in violation of Utah Code Ann. § 58–37a–5(1) (1998). The trial court based its order "on grounds that prosecution of this case is barred under Utah Code Ann. § 77–29–1 (1999)" (Speedy Trial Statute), which requires the State to bring an incarcerated defendant to trial within 120 days of receiving notice from the defendant requesting disposition of pending charges. We reverse and remand.

### BACKGROUND

¶ 2 Because the date of each event is important to the outcome of this case, the undisputed facts are listed chronologically as follows:

September 28, 1999  Defendant was arrested.

October 19, 1999  The State filed an information charging Defendant with the offenses listed above.

October 28, 1999  Defendant executed a Notice and Request for Disposition of Charges, (Notice) and an Office Memorandum.

Mark L. Shurtleff, Attorney General, Kris C. Leonard, and Brenda J. Beaton, Assistant Attorney General, Salt Lake City, for Appellant.

---

1. This section has been amended since Defendant's arrest, but no relevant language was al-tered. Thus, for convenience we cite to the most recent version of the statute.

November 2, 1999   Defendant requested a preliminary hearing. However, instead of requesting the preliminary hearing within ten days of Defendant's arrest, as Rule 7(g) of the Utah Criminal Code requires the prosecution to do when an in-custody defendant requests such a hearing, Defendant requested a preliminary hearing thirty days from the date of his request. *See* Utah R.Crim. P. 7(g). The hearing was scheduled for November 30, 1999.

November 15, 1999   Utah State Prison stamped Defendant's Notice as "Received."

November 30, 1999   Defendant's preliminary hearing was continued because defense counsel noted a possible conflict of interest counsel might have had with Defendant's wife. The hearing was continued to December 21, 2000.

December 21, 1999   The preliminary hearing was continued to January 20, 2000 to allow time to resolve the above-mentioned conflict of interest.

January 20, 2000   The preliminary hearing began, but was not completed due to another commitment by the trial court and Defendant's desire to subpoena another witness. The court attempted to reschedule the hearing to February 1, 2000, but defense counsel was unavailable on that date. The hearing was scheduled for February 24, 2000, the trial court's next available date.

February 24, 2000   The preliminary hearing was completed, and Defendant was bound over for trial.

March 20, 2000   Defendant was arraigned and requested a hearing on an anticipated motion to dismiss (based on the Speedy Trial Statute) and a motion to suppress.

March 24, 2000   Defendant's counsel filed a Memorandum in Support of Defendant's Motion to Dismiss (Memorandum). A document entitled "Motion to Dismiss" was never filed.

March 27, 2000   Defendant's counsel filed a Motion to Suppress with a supporting memorandum.

May 15, 2000   A hearing on both motions was held. The trial court determined that 6 days remained on the 120–day period, and ruled that because it could not hear the matter within that time, unless the State could get another judge to hear the matter, it would dismiss Defendant's charges with prejudice when that time expired.

May 23, 2000   The trial court dismissed Defendant's charges pursuant to the Speedy Trial Statute.

The state appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 3 The State first challenges the trial court's ruling that the Speedy Trial Statute [2] bars prosecution of Defendant, contending that the trial court "miscalculated the elapsed time." "[W]e have interpreted both Utah Code Ann. § 77–29–1 and its predeces-

2.   This statute provides,

(1) Whenever a prisoner is serving a term of imprisonment in the state prison, jail or other penal or correctional institution of this state, and there is pending against the prisoner in this state any untried indictment or information, and the prisoner shall deliver to the warden, sheriff or custodial officer in authority, or any appropriate agent of the same, a written demand specifying the nature of the charge and the court wherein it is pending and requesting disposition of the pending charge, he shall be entitled to have the charge brought to trial within 120 days of the date of delivery of written notice.

. . . .

(3) After written demand is delivered as required in Subsection (1), the prosecuting attorney or the defendant or his counsel, for good cause shown in open court, with the prisoner or his counsel being present, may be granted any reasonable continuance.

(4) In the event the charge is not brought to trial within 120 days, or within such continuance as has been granted, and defendant or his counsel moves to dismiss the action, the court shall review the proceeding. *If the court finds that the failure of the prosecuting attorney to have the matter heard within the time required is not supported by good cause, whether a previous motion for continuance was made or not, the court shall order the matter dismissed with prejudice.*

Utah Code Ann. § 77–29–1 (1999) (emphasis added).

sor as granting discretion to the trial court." *State v. Petersen*, 810 P.2d 421, 424–25 (Utah 1991) (footnote omitted) (applying "the same standard of review" to all subsections of the Speedy Trial Statute). Accordingly, we review a trial court's determination that a defendant's charges should be dismissed pursuant to the Speedy Trial Statute for abuse of discretion. *See State v. Trujillo*, 656 P.2d 403, 405 (Utah 1982) ("[T]he trial court did not abuse its discretion in finding that there was 'good cause' that the matter was not heard within the time designated."); *see also* 21A Am.Jur.2d *Criminal Law* § 1048 (2000) (stating abuse of discretion standard is used to review a grant of dismissal under speedy trial statute). An appellate court will find abuse of discretion only where there is no "reasonable basis in the record to support" the trial court's Speedy Trial Statute determination of "good cause." *State v. Bonny*, 25 Utah 2d 117, 477 P.2d 147, 148 (Utah 1970); *see also Petersen*, 810 P.2d at 424–25 (stating that a trial court may make a Speedy Trial Statute "good cause" determination "if there is a reasonable basis in the record" to do so).[3]

¶ 4 Before reviewing the trial court's determination for abuse of discretion, however, we review the trial court's legal conclu-

sions for correctness, and its factual findings for clear error.[4] *See Petersen*, 810 P.2d at 425.

¶ 5 In the alternative, the State challenges the trial court's dismissal of "all three charges pending against [D]efendant based on a violation of his statutory speedy trial right when [D]efendant had invoked [the Speedy Trial Statute] only as to one charge." "Matters of statutory interpretation present questions of law which we review for correctness, according no particular deference to the trial court's interpretation." *State v. Lindsay*, 2000 UT App 379, ¶ 4, 18 P.3d 504. However, because the State

> did not object on the record [to the dismissal of all three charges] at trial, [it] can only obtain relief by demonstrating plain error. Plain error requires a showing that " '(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for [the State].' " [5]

*State v. Garcia*, 2001 UT App 19, ¶ 6, 18 P.3d 1123 (citations omitted).

## ANALYSIS

¶ 6 We first address the trial court's ruling that dismissal was appropriate

---

3. The State cites *State v. Heaton*, 958 P.2d 911 (Utah 1998), for the proposition that a "determination of whether various delays in bringing a defendant to trial toll the time for trying the defendant under [the Speedy Trial Statute] constitutes a legal question reviewed on appeal for correctness." However, the court in *Heaton* applied the correctness standard because the trial court reached its "good cause" determination under the Speedy Trial Statute by erroneously interpreting the Speedy Trial Statute, and not because such determinations are deemed questions of law in and of themselves. *See id.* at 915; *see also Petersen*, 810 P.2d at 425 ("[T]rial courts do not have discretion to misapply the law. Therefore, legal determinations concerning the proper interpretation of the statute which grants the trial court discretion are reviewed for correctness. Similarly, the trial court's factual determinations will not be disturbed unless clearly erroneous. It is only after these primary determinations are made that the record can be reviewed for the existence of a reasonable basis for the proposition that good cause existed ....") (footnotes omitted)). Thus, while underlying legal conclusions and factual findings are reviewed for correctness and clear error respectively, *Heaton* does not stand for the proposition that ulti-

mate determinations of good cause under the Speedy Trial Statute are reviewed for correctness.

4. "[T]he trial court's determination of delay attributable to the defendant" is one such factual finding. *State v. Phathammavong*, 860 P.2d 1001, 1004 (Utah Ct.App.1993).

5. Our resolution of the first issue obviates our need to reach this second issue. Nevertheless, we note that the State's argument would fail under a plain error analysis because the error was not obvious. "To show obviousness of the error, [the State] must show that the law was clear at the time of trial." *Garcia*, 2001 UT App 19, at ¶ 6, 18 P.3d 1123; *see also State v. Ross*, 951 P.2d 236, 239 (Utah Ct.App.1997) (" '[E]rror is not plain where there was no settled appellate law to guide the trial court.' " (citation omitted)). The State cites several Georgia cases that, if applicable, would resolve this issue in its favor. But the State was forced to go outside of Utah to find legal support because Utah has "no settled appellate law to guide the trial court." *Ross*, 951 P.2d at 239. Thus, any error on the part of the trial court was not obvious, and the State's plain error argument is flawed.

under the Speedy Trial Statute. The trial court entered an Order of Dismissal after it determined that it could not "find there's good cause." " 'Deciding whether the district court properly *denied* [a defendant's] motion to dismiss pursuant to the detainer statute requires a two-step inquiry. First we must determine when the 120–day period commenced and when it expired.' " [6] *State v. Lindsay*, 2000 UT App 379, ¶ 9, 18 P.3d 504 (citation omitted) (emphasis added). " 'Second, if the trial was held outside the 120–day period, we must then determine whether "good cause" excused the delay.' " [7] *Id.* (citation omitted). A finding of "good cause" that will excuse failure of the prosecution to bring a defendant to trial within the time required means (1) delay caused by the defendant— such as asking for a continuance; or (2) "a relatively short delay caused by unforseen problems arising immediately prior to trial." *State v. Petersen*, 810 P.2d 421, 426 (Utah 1991) (footnote omitted); *see also State v. Heaton*, 958 P.2d 911, 916–17 (Utah 1998); *State v. Velasquez*, 641 P.2d 115, 116 (Utah 1982).

¶ 7 The State characterizes this issue as a mere miscalculation by the trial court of time elapsed under the Speedy Trial Statute. Specifically, the State disputes the trial court's calculation as to the following periods: (1) from November 15, 1999, to November 30, 1999; (2) from February 1, 2000, to February 24, 2000; and (3) from March 24, 2000, to March 30, 2000. However, the effect of the State's dispute is to challenge the trial court's determination that "the failure of the prosecuting attorney to have the matter heard within the time required is not supported by good cause." Utah Code Ann. § 77–29–1(4) (1999). Thus, we first discuss those factual findings and legal conclusions of the trial court which effect the three challenged time periods, and then discuss whether the trial court exceeded its discretion in determining that no "good cause" existed.

*From March 24, 2000, to March 30, 2000*

¶ 8 The trial court correctly ruled that Defendant's Motion to Suppress tolled the 120–day time period because the motion was a delay caused by Defendant. *See State v. Banner*, 717 P.2d 1325, 1329–30 (Utah 1986) (stating that a defendant's actions which delay the trial and toll the time period include "delay caused to hear defendant's motion to ... exclude evidence of his prior convictions"); *Petersen*, 810 P.2d at 426. However, the State challenges the trial court's use of Defendant's motion to suppress, rather than his motion to dismiss, as the appropriate date to begin tolling the Speedy Trial Statute.[8]

---

6. We apply the same two-step inquiry when reviewing a challenge to a trial court's *grant* of dismissal pursuant to this statute.

7. The trial court found that the 120–day period commenced on November 16, 1999, the day after the Utah State Prison stamped Defendant's Notice "received." Defendant contends that the 120–day period commenced on October 28, 1999, the day Defendant allegedly executed the Notice. Defendant argues that the prison received Defendant's Notice, and therefore the 120–day period began, on October 28 based on the trial court's statement, "the defendant filed his 120–day disposition papers on October 28." Characterized as a finding, this statement would contradict the trial court's "finding that the operative date to begin calculating the 120[-]day period is November 16th." However, "when viewing the evidence in a light most favorable to the trial court's ruling," *State v. Gamblin*, 2000 UT 44, ¶ 17 n. 2, 1 P.3d 1108, the trial court's use of the November 16 date, the "received" stamp on Defendant's Notice, and the lack of any other evidence supporting Defendant's position persuades us that "the evidence is [ ]sufficient to support the trial court's finding[ ]." *Id.* Thus, we reject Defendant's assertion, and focus on the "good cause" step of the analysis.

8. The State alternatively challenges the trial court's finding that Defendant's "Motion to Suppress was filed on March 30th," and thus began tolling the Speedy Trial Statute on that date. The record clearly indicates, and Defendant concedes in his brief, that Defendant's Motion to Suppress was actually filed on March 27th. The state correctly notes that the only evidence of the date on which Defendant filed this motion is the date stamp on the motion itself. Thus, the State has marshaled the evidence and has shown that "even when viewing the evidence in a light most favorable to the trial court's ruling, the evidence is insufficient to support the trial court's finding[ ]." *State v. Gamblin*, 2000 UT 44, ¶ 17 n. 2, 1 P.3d 1108. Accordingly, the trial court's finding was clearly erroneous. *See id.* However, our ruling regarding Defendant's motion to dismiss renders this argument moot.

¶ 9 Notwithstanding Defendant's failure to file a document entitled "Motion to Dismiss," neither party contends that Defendant did not, in fact, move the trial court to dismiss. Indeed, the trial court's Order of Dismissal states that Defendant "motioned this Court to dismiss." Confusion has arisen, however, regarding *when* Defendant's motion was made. The State suggests that Defendant made his motion on March 24, when he submitted his Memorandum, and that the Speedy Trial Statute was tolled from that date.

¶ 10 A request to the trial court for an order "shall be by motion. A motion other than one made during a trial or hearing shall be in writing unless the court otherwise permits. It shall state with particularity the grounds upon which it is made and shall set forth the relief sought." Utah R.Crim. P. 12(a). Moreover, "[i]f no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or statutes." Utah R.Crim. P. 31. Requiring "[n]o technical forms of pleading or motions" is not inconsistent with the Utah Rules of Criminal Procedure to require. Utah R. Civ. P. 8(e)(1). Thus, based on our review of Defendant's Memorandum, we conclude that the Memorandum satisfied the requirements of Rule 12, and that his motion to dismiss was made on March 24. *Cf.* David A. Thomas, *Utah Civil Practice*, § 7.03(4)(b) at 224 (1992) ("The memorandum of points and authorities in support of a motion could either be integrated into the motion document or filed as a separate but accompanying document.").

¶ 11 The Utah Supreme Court has held that "delay caused to hear defendant's motion to dismiss for lack of speedy trial" constitutes good cause excusing the prosecution's delay. *Banner,* 717 P.2d at 1329–30; *accord Heaton,* 958 P.2d at 916–17. The trial court therefore erred when it failed to conclude that Defendant's motion to dismiss comprised a delay attributable to him. Moreover, nothing in the record indicates that the State could not have brought Defendant's matter to trial within the required time had it not been for the trial court's error. Thus, there is no "reasonable basis in the record to support" the trial court's determination that "good cause" did not excuse the prosecution for its failure to bring the matter to trial within one week of the May 15 hearing. *State v. Bonny,* 25 Utah 2d 117, 477 P.2d 147, 148 (Utah 1970). Accordingly, the trial court exceeded its discretion in dismissing the matter, and we reverse the trial court's determination that good cause did not excuse the delay between March 24 and March 30.

*From November 15, 1999, to*
*November 30, 1999*

¶ 12 The State does not contest the trial court's ruling that the 120–day period began on November 15. However, it challenges the trial court's ruling that Defendant should not be held responsible for the period between November 16 and November 30 "because defendant filed his disposition request during a period of delay attributable to himself." Defendant delayed his preliminary hearing by requesting that the hearing be held thirty days from the date of his request, rather than within ten days of his arrest, as Rule 7(g) of the Utah Rules of Criminal Procedure requires of the prosecution when an in-custody defendant requests a preliminary hearing. *See* Utah R.Crim. P. 7(g). The State argues that it would have brought Defendant to trial earlier if Defendant had not delayed his preliminary hearing.

¶ 13 A defendant's delay of the preliminary hearing may delay commencement of the trial, and thereby toll the Speedy Trial Statute. *See Heaton,* 958 P.2d at 916. However, the State waived any argument that Defendant's request for a delayed preliminary hearing tolls the 120–day period when it passively accepted Defendant's request.

¶ 14 The State knew that this request might precede or come in conjunction with Defendant's Notice, which would initiate running of the 120–day period. Further, the State knew that upon delivery of Defendant's Notice, the Speedy Trial Statute "clearly places the burden of complying with the statute on the prosecutor." *Id.* at 915. Nevertheless, the prosecution did not object, request a finding that the delayed preliminary

hearing constituted a delay attributable to Defendant, or make any motion regarding Defendant's request. Simply put, the prosecution, knowing that it had or could soon have an obligation to bring the matter to trial within 120 days, may not passively accept a defendant's delay of the preliminary hearing, and then turn around and claim the delay kept the prosecution from meeting its burden. *Cf. State v. Wach*, 2001 UT 35,¶ 40, 24 P.3d 948. ("This court has long maintained that a party cannot seek to reverse an unfavorable verdict by complaining of an error that the trial court could have corrected had it been timely informed of the error."). Accordingly, we affirm the trial court's ruling that Defendant's request to hold the preliminary hearing twenty days later than usual was not "good cause" to excuse the State from its burden.[9]

### From February 1, 2000, to February 24, 2000

¶ 15 The State finally contends that the period between February 1 and February 24 should constitute "good cause" delay excusing the prosecution's failure to bring Defendant to trial within 120 days. When the trial court continued the preliminary hearing on January 20, it first indicated that it could hold Defendant's hearing on February 1. However, defense counsel's schedule would not allow him to be available on that date, so the matter was continued to February 24. The State argues that defense counsel's unavailability on February 1, the trial court's next available opening, necessitated a continuance of the preliminary hearing to February 24, and thereby constituted "good cause" for delay. We agree.

¶ 16 The trial court stated that it did not "find any basis for tolling the 120–day period between those two dates." This "finding" is an ultimate determination as to the lack of "good cause" under the Speedy Trial Statute, not a finding of fact, as Defendant asserts. Thus, as previously mentioned, we review this ultimate determination for abuse of discretion after reviewing the trial court's findings of fact for clear error and its legal conclusions for correctness. *See Petersen*, 810 P.2d at 424–25; *see also Trujillo*, 656 P.2d at 405; 21A Am.Jur.2d *Criminal Law* § 1048 (2000).

¶ 17 The trial court did not make any finding as to whether this delay [10] was attributable to Defendant. We do not remand for further findings on this issue, however, because we hold that the trial court exceeded its discretion by basing its determination on an incorrect legal conclusion.[11]

¶ 18 The trial court concluded that this period was not "good cause" delay because "the court is responsible to move the cases forward too." Although the trial court correctly concluded that it is also responsible to "move the cases forward," the Utah Supreme Court has held that "extending the trial date to a reasonable time outside the disposition period to accommodate, in part, defense counsel's schedule constitutes 'good cause' under [the Speedy Trial Statute]." [12] *Heaton*, 958 P.2d at 917. But for the court's accommodation of defense counsel's schedule, the preliminary hearing would have concluded on February 1. Thus, the extension of time granted to defense counsel to accommodate his unavailability on February 1 constitutes "good cause" under the Speedy Trial Statute, and the trial court exceeded its discretion by basing its Speedy Trial Statute determination on an erroneous legal conclusion to the contrary. Accordingly, we re-

---

9. We "may affirm a 'judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record,' even though that ground or theory was not identified by the lower court as the basis of its ruling." *Orton v. Carter*, 970 P.2d 1254, 1260 (Utah 1998) (citation omitted).

10. Neither party contends that this period was not a "delay" as contemplated by the Speedy Trial Statute.

11. "[T]rial courts do not have discretion to misapply the law. Therefore, legal determinations concerning the proper interpretation of the statute which grants the trial court discretion are reviewed for correctness." *Petersen*, 810 P.2d at 425 (footnotes omitted).

12. We see little difference between defense counsel's circumstance and a situation in which the defense counsel expressly requested a continuance from a February 1, 2000, preliminary hearing date.

verse the trial court's determination that good cause did not excuse the period of delay from February 1 to February 24.

## CONCLUSION

¶ 19 The trial court exceeded its discretion [13] by basing its determination that "good cause" did not excuse delay of the trial on erroneous interpretations of "good cause" under the Speedy Trial Statute. Twenty-nine days, which will begin to run when the trial court regains jurisdiction over this matter, remain before the Speedy Trial Statute bars prosecution of this case.[14] *Cf. White v. State*, 795 P.2d 648, 649 (Utah 1990) ("The general rule [is] that an appeal divests the trial court of jurisdiction and transfers jurisdiction to the appellate court, where it remains until the appellate proceeding terminates and the trial court regains jurisdiction."). Accordingly, we reverse the trial court's Order of Dismissal and remand for further proceedings consistent with this opinion.

¶ 20 WE CONCUR: JUDITH M. BILLINGS, Judge, and JAMES Z. DAVIS, Judge.

13. Although "[a] court has the right to control its own calendar," *Hill v. Dickerson*, 839 P.2d 309, 311 n. 1 (Utah Ct.App.1992), we are somewhat troubled by the apparent casualness of the trial court's attempt to schedule this matter for trial. As the trial court noted, "the court is responsible to move the cases forward too," yet it seemed unaware of how much time had run on the Speedy Trial Statute until Defendant moved to dismiss. We note that under the federal scheme "[p]reference [is] given to criminal proceedings as far as practicable." Fed. R. Crim P. 50(a). One effect of this rule is that, " '[federal] district courts are under significant pressure to exercise their powers so that cases may be concluded within the' time limits set by the Speedy Trial Act." 28 James W. Moore, *Moore's Federal Practice* ¶ 650.03[3][b] (3d ed. 1997) (citation omitted). Also, "to conform to the requirements of the Act, [federal] district courts deny motions for continuance that 'would have been routinely allowed' prior to the adoption of the Speedy Trial Act and Rule 50." *Id.* We similarly urge the trial court to make every reasonable effort to conclude this matter within the time required by the Speedy Trial Statute.

14. During the February 1 to February 24 time period, twenty-three days were tolled, beginning February 2 and ending February 24. *See* Utah R.Crim. P. 2(a). During the March 24 to March 30 time period, six days were tolled, beginning March 25 and ending March 30. *See id.* Neither party asserts that the period between May 15 and May 23 should have been tolled.